STATE of Missouri, Plaintiff-Respondent,

v.

Raymond Augustus KNOX, Defendant-Appellant.

No. 36108.

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 16, 1975.

Motion for Rehearing or Transfer Denied Oct. 22, 1975.

Application to Transfer Denied Dec. 8, 1975.

Charles D. Kitchin, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Thomas C. Muldoon, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Raymond Augustus Knox appeals from a conviction of Robbery in the First Degree by Means of a Dangerous and Deadly Weapon, §§ 560.120 and 560.135 RSMo 1969. At trial it was also charged that he was a Second Offender within the provisions of § 556.280 RSMo 1969 and after an eviden- tiary hearing the trial court made a finding in accord with the requirements of the stat- ute and sentenced the defendant, following the verdict of the jury and overruling of his motion for new trial, to 15 years in the custody of the Missouri Department of Cor- rections.

On this appeal Knox contends that the trial court erred in two respects which en- title him to have his conviction reversed and the cause remanded to the trial court for a new trial. His first Point is directed to the denial of the trial court of his motion to suppress the in-court identification of Knox as one of the robbers. His second Point is that the trial court erred in not giving the verdict directing instruction in the form approved by MAI–CR. We affirm.

Defendant, as Knox shall hereinafter be identified, does not question the sufficiency of the evidence to support the verdict of the jury and we may therefore set forth the facts in the light most favorable thereto, disregarding any evidence which does not support it. *State v. Stapleton*, 518 S.W.2d 292 (Mo.banc 1975).

From the State's evidence the jury could find that on February 24, 1973, at approxi- mately 4:00 p. m. Joseph Welch and Steve Ehrhart returned to their apartment from some grocery shopping, accompanied by Mark Wiggins. The three carried some groceries into the apartment and put them in the kitchen, after which they proceeded down a hall toward a stairwell. As they were proceeding down the hallway Xantha- mas Sledge, hereinafter referred to as Sledge, came out of one of the bedrooms off the hallway, pointed a gun at them and told them to "freeze." They did, and while they remained standing in the hallway, a second man—this defendant—came out of the same bedroom from whence Sledge had emerged, and then Sledge and the defend- ant ushered the three young men from the hallway into the front bedroom where Ehr- hart and Wiggins were tied up with their hands behind their backs. Wiggins was then also tied up and forced to lie on top of

his companions. Defendant did the actual tieing and while doing so removed from the bound victims their wallets and watches. Defendant and Sledge then ransacked the apartment, leafing through boxes and emptying drawers while doing so. Both defendant and Sledge were in the apartment with the victims for almost twenty minutes, after which they left the three young men still bound and lying on the floor, making good their escape from the scene of the crime.

At trial both Welch and Ehrhart unhesitantly identified the defendant as the robber who tied them up. Wiggins was unable to identify him as one of the culprits. The manager of the sporting goods store also testified that he saw the defendant and Sledge in his store on the 31st day of July, when Sledge purchased a shotgun using Welch's name and driver's license. Another employee of the sporting goods store corroborated the testimony of the manager of the store in these respects. Defendant presented alibi witnesses to establish that on the date when the robbery occurred he was at a party at his sister's home from 12:30 p. m. until 8:00 p. m.

Defendant had filed a motion to suppress evidence prior to trial which was taken up at the outset of the trial out of the presence of the jury. At this evidentiary hearing the prosecutor who conducted the photographic show-up testified that on August 14, 1973, during the course of a preliminary hearing in a magistrate court in St. Louis County on a check charge against Xanthamas Sledge, Joseph Welch identified Sledge as one of the two men who had robbed him on February 24, 1973. The prosecutor was aware of the fact that this defendant had been arrested with Sledge and that the second robber in the Welch robbery had not as yet been identified. Armed with this information, plus the knowledge that the defendant was in the custody of the police charged with riding in a motor vehicle without the owner's consent, a misdemeanor, §§ 560.175 ¶ 4 and 560.180 ¶ 2, arising out of the arrest of both Sledge and the defendant, and that the defendant would soon be released from police custody, the prosecutor undertook to arrange for a lineup so that Welch could view the defendant to see whether he could identify him as the other robber.

At about 5:00 p. m. the afternoon of the preliminary hearing the prosecutor attempted to arrange a lineup at the St. Louis County Jail where the defendant was in custody, but, due to strenuous objections by defendant's counsel—at that time one of the public defenders of St. Louis County—to the makeup of the lineup, the three volunteers who had been enlisted by someone in the St. Louis County Welfare Department to participate in the lineup refused to do so. The prosecutor then decided on a photo showup in lieu of the lineup he had initially planned. A photo of the defendant was obtained and seven "mug shots" of other black men were also procured, and the lower portions of the "mug shots" on which the name and descriptions of the person photographed were cut off. In describing the persons portrayed in the photos the prosecutor testified at the evidentiary hearing that although some of the persons portrayed had different hair styles, facial hair, and other distinctive features, they were not so different as to be suggestive. Mr. Welch identified the photo of the defendant from among the eight photos shown to him as the photo of one of the men who had robbed him. Mr. Welch also testified at the evidentiary hearing on the motion that he was able to view the robbers during the robbery for approximately 20 minutes, that the faces of the robbers were not covered at any time throughout, and that the robbery occurred during the daylight hours.

The assistant public defender who represented the defendant at the time of the aborted lineup testified at the evidentiary hearing on defendant's motion to suppress that he made several objections to the other persons who were going to participate in the lineup because of the differing physical characteristics of the men, as compared to the defendant. He testified that he re-

quested that men with features similar to defendant's be used in the lineup, but this was not done. He also testified that he was threatened with arrest for obstruction of justice by reason of his objections and his efforts to obtain what he considered would be a fair lineup. He requested that he be allowed to be present for any viewing of pictures of the defendant by the victim, and when shown the pictures which were going to be used he stated that he did not approve of the pictures due to the difference in the features of the men. He testified: "First of all I object (sic) because I wasn't allowed in the room in which there was any showing of the pictures. I pointed out that some of the men in the pictures didn't look like Mr. Knox. Most of them didn't. I don't know that any really did look like him at all. The pictures had black men in them, but they all had like bigger afros, . . . I believe one of them was bald. Mr. Knox had sideburns. I don't believe any of the other pictures were of people with sideburns. Mr. Knox had a relatively caucasian nose, and many of the other pictures had black people with flatter noses." He concluded: "I was shown the pictures, and I said you are going to go on with this anyway, and I just acquiesced to what they did."

The public defender also testified that at one stage of the preliminaries to the photo showup a county police officer passed close by Mr. Welch—"within a foot or two"—with a picture of the defendant in his possession. He admitted that he could not "say for sure" whether Mr. Welch saw the picture, but he didn't know how he could have missed seeing it. He said that he had seen the picture as it went by and Mr. Welch was looking in the same direction. At the evidentiary hearing defendant's counsel did not inquire of Mr. Welch while he was on the stand whether he saw defendant's picture and there is no other evidence in the record to support any finding that he did.

At the conclusion of the evidentiary hearing the trial court denied defendant's motion to suppress identification testimony.

Defendant's first Point on appeal is directed to what he contends is a violation of his Fifth and Fourteenth Amendment rights under the United States Constitution by reason of the admission into evidence of an overly suggestive pretrial photo identification. He argues that viewed in the totality of the circumstances one must conclude that there was a "suggestive influence by others" in the pre-trial identification of the defendant and there was no substantial "independent basis of identification" to overcome this infirmity in the identification process used here.

The totality of the circumstances to which defendant refers are:

1) the police did not hold a lineup,

2) the police allowed the victim to see the photograph of the defendant prior to the photographic identification,

3) the public defender objected because he wasn't allowed in the room in which there was any showing of the pictures,

4) the description given by the police to Mr. Welch immediately after the robbery differs in a significantly important aspect from the actual physical characteristics of the defendant,

5) one of the three persons in the apartment at the time of the robbery could not positively identify the defendant as one of the robbers, and

6) there was a lapse of almost six months between the date of the occurrence of the crime and the viewing of the defendant's photograph.

Both parties rely on *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) for the principle that a conviction based on eyewitness identification by photograph will be set aside on that ground alone only where the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and that the application of

the principle shall be on a case by case basis. Whether a particular photographic identification procedure is a violation of due process depends on the totality of the circumstances surrounding the procedure. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ The first circumstance comprising one of the "totality of the circumstances" in this case which defendant would have us consider is the failure of the police to hold a lineup, even though they had the defendant in custody. This assertion is without merit for at least two reasons. First, there is no constitutional right to a lineup. *State v. Haselhorst*, 476 S.W.2d 543, 547[3] (Mo. 1972). Secondly, the lineup was abandoned because of the objections to its makeup voiced by the public defender who had appeared at police headquarters to represent the suspect and oversee the manner in which the lineup was conducted. The objections of the public defender to the composition of the lineup resulted in the volunteers' refusal to participate and therefore made the conduct of the lineup impracticable. Defendant will not be heard to complain of the composition of the lineup and also decry the failure of the prosecuting authorities to then conduct a lineup which meets his specifications. The public defender had prevailed in his function as representative of the suspect to make known his objections to the manner in which the lineup was being conducted, but he cannot then preclude the State from some other procedure of identification conducted in a manner which is not impermissibly suggestive. A lineup may serve the purpose of obtaining a prompt release of one wrongfully under suspicion as well as lead to an identification which might culminate in charges being filed and prosecution pursued. We find no merit in this "circumstance."

■ The second circumstance—that the police allowed the victim to see defendant's photo prior to the photographic showup—is a matter of fact dependent upon testimony, which is at best, speculation on the part of the public defender. We conclude that this evidence was for the trier of fact, in this instance the trial court, and we find no error with respect to its finding. We find that this is not a circumstance considered among the "totality of circumstances" of the identification procedure used in this case, calling for a reversal of this conviction.

The third circumstance defendant requests we consider is the exclusion of counsel from the room where the photographic identification took place. This "circumstance" is not presented on Sixth Amendment grounds. At the time of the photographic identification defendant was not charged with the crime of which he was later convicted and from which conviction he now appeals. He was then in custody on another charge and the City of St. Louis Police Department had lodged a "hold" order on him with the County authorities. The testimony of the public defender is that his objections to the manner in which the lineup was going to be conducted and which ultimately caused that procedure of identification to be abandoned brought a threat that if he persisted he would be arrested for obstructing justice. He requested that he be allowed to be present at the photographic identification, and when shown the mug shots which the State was going to use he again made objections to the photographs for the same reasons he had objected to the make-up of the proposed lineup. By this time he had concluded that "they" were going to go on with the photographic identification despite his objections and "I just acquiesced in what they did."

Assuming, without deciding, whether when a suspect is in police custody under the circumstances outlined above and he is a suspect in another crime for which he is not then charged, counsel is required or permitted to be present at any identification procedures to assure that they are conducted without suggestiveness which is likely to lead to misidentification, we are then confronted with the question of what

part counsel is to play in the identification proceedings. Neither party to this case has cited any authority in this respect nor has our research brought to light any Missouri case setting out guide-lines for counsel or for the prosecutorial authorities in such instances. Whether defendant in this case was entitled to counsel at the identification procedures is a moot question because counsel was present and functioning in a manner he concluded was within the ambit of his duties. We would conclude that any threat of arrest for obstruction of justice was certainly inappropriate under the facts developed at the evidentiary hearing as we read them in this record, where all we have before us are objections to the manner in which the identification proceedings were being conducted and requests that a lineup more representative of the defendant's physical appearance be constituted. If the public defender's conduct was anything other than lawyer-like, we have no evidence of that fact before us, although there is some evidence that the discussion became somewhat loud at times.

■ However, we conclude that this one facet of the circumstances surrounding the photographic identification, alone, does not require that this conviction be reversed and remanded. The same photos to which the public defender made known his objections at police headquarters prior to the conduct of the photographic identification procedure in his absence, were admitted into evidence at the evidentiary hearing on his motion to suppress, were viewed by the trial judge and found to be not likely to result in misidentification by the trial court's ruling denying defendant's motion to suppress.

Neither the defendant nor the State has seen fit to file with the clerk of this court the photographs used in the identification proceedings and introduced into evidence by the defendant as his exhibits at the evidentiary hearing on the defendant's motion to suppress, despite the provisions of Rule 81.-15. Although we have authority by Rule 81.12(c) to direct the clerk of the trial court to send to us the original exhibits in the case, we conclude that were there any merit to defendant's contentions that these photographs were not suitable for photographic identification procedures, his counsel on appeal would have either required the clerk to file them in this court or have sought an order of this court directing that they be so filed. To request that we "second-guess" the trial judge without affording this court the photographs in question is, in our opinion, placing this court in an untenable position.

■ Defendant has produced no evidence that any inappropriate statements or suggestions were made to Mr. Welch by State authorities in attendance at the photographic showup from which the public defender was excluded. Nor has he shown that the absence of the public defender from the room resulted in a misidentification. We hold, therefore, that under the facts developed in this record the absence of the public defender from the room in which the photographic identification occurred is not one of a "totality of circumstances" requiring a reversal of this conviction.

The fourth circumstance defendant contends should be considered is the description given by Mr. Welch to the police immediately after the robbery, which he contends differs in a significantly important aspect from the actual physical characteristics of the defendant. The characteristic he has reference to is the defendant's weight.

■ At the evidentiary hearing on defendant's motion to suppress, Mr. Welch testified that immediately after the robbery he described the defendant to the police as a Negro male, approximately 30 years of age, five feet eight to ten inches tall, weighing approximately *180 pounds*, and stockily built. The difference defendant refers to is the weight. He contends that he never weighed more than 135 pounds.

At the time the trial court ruled on the defendant's motion to suppress the only gauge he had as trier of fact to determine whether Mr. Welch's description of the rob-

ber was inaccurate to the point that his in-trial identification testimony would be tainted by the photographic identification procedure as to be inadmissible, was the appearance of the defendant as he sat before him in the courtroom some 11 months after the date of the commission of the crime and 5 months after Mr. Welch viewed the photographs. The evidence on which defendant relies did not come into the case until later when the defendant was presenting his case before the jury on the guilt issue, and when his witnesses testified that he never weighed more than 130 pounds. We are asked here to hold that the trial court erred in denying a motion to suppress identification on the basis of evidence which was not before him at the time he made his ruling.

Assuming arguendo, that the trial court did take this evidence into consideration at the time he ruled on defendant's motion for new trial, we would nonetheless conclude that this circumstance would not require a reversal of defendant's conviction on the basis of the admission of Mr. Welch's identification testimony. It would at best go to the weight to be given to that testimony in view of the other physical characteristics of the defendant which defendant does not attack as inaccurate.

■ Defendant's fifth circumstance is not directed at any infirmity in the identification of the defendant by Mr. Welch, who was the only one whose testimony was sought to be suppressed by reason of suggestiveness at the photographic identification showup. Mr. Wiggins' inability to identify the defendant could in no way affect the admissibility of Mr. Welch's identification of the defendant. All it shows is that one of the three men present at the scene of the robbery was unable to identify the defendant as one of the robbers at trial. Mr. Wiggins' testimony was not that the defendant was not one of the two robbers; rather it was that the defendant could have been one of the robbers but he was not really sure.

■ The final circumstance defendant relies on is the length of time—approximately six months—which had passed between the date of the robbery and the photographic identification by Mr. Welch. This circumstance is a legitimate circumstance for consideration but by itself is not alone grounds for reversal.

■ Having considered the circumstances presented as grounds for finding error in the trial court's ruling denying defendant's pre-trial motion to suppress identification and finding them to be without merit, we also conclude that there is in the evidence support for a finding that even had the photographic evidence procedure been impermissibly suggestive, Mr. Welch had an independent basis of identification other than the photographic showup. He viewed the unmasked defendant during the daylight hours for at least five minutes during the twenty minutes the robbers were in the apartment. There is no evidence that Mr. Welch's identification of the defendant was prompted by suggestive influence from the prosecutor or the police officers. Thirdly, Mr. Welch positively identified the defendant as one of the robbers at the preliminary hearing and again in the courtroom during trial and was subjected to thorough cross-examination on this issue without being shaken in his identification. He testified that he memorized the defendant's face while the robbery was in progress. We conclude that this evidence meets the tests set out in *State v. Parker*, 458 S.W.2d 241, 244 (Mo.1970). The exclusionary rule is not applicable where the witness has an independent basis for the identification. *State v. Carey*, 486 S.W.2d 443, 446 (Mo.1972).

We rule this Point against defendant.

Defendant's second Point is that the trial court erred in reading to the jury "*Instruction No. 5*" because it failed to conform with the approved form of MAI–CR 7.62 in that it omitted the general converse paragraph from the instruction and thus constituted prejudicial error.

It is clear that a trial judge is required in a criminal case to give a general converse at the end of a verdict director. MAI–CR 2.04 is the approved instruction for a verdict director for the principal offense. All other MAI–CR instructions relative to specific crimes are patterned after this instruction. MAI–CR 2.04 contains a general converse. The Notes on Use following MAI–CR 2.04 state:

"1. This form must be followed in all verdict directing instructions for the state . . .

   \*    \*    \*    \*    \*    \*

2. Eighth. A general converse.

*A general converse must not be included in the verdict directing instruction* (1) where an affirmative defense has been submitted (see MAI–CR 2.30), or (2) in any homicide instruction where both so-called common law homicide and felony-murder are submitted. . . ."

In the Foreword of the Missouri Bar Committee Comments on Missouri Approved Criminal Instructions, at page 9, the following appears:

"The Committee also proposed that each verdict directing instruction for the state (with significant exceptions) should conclude with a general converse, though that addition does not eliminate the need for giving a separate converse if requested."

Separate converse instructions are included in the 300 series and are required to be given upon request. This is indicative of the adoption of the committee's proposal thereby making it mandatory for the inclusion of a general converse in all verdict directors other than the two exceptions noted in the Notes on Use to MAI–CR 2.04.

Rule 20.02(c) states that whenever there is an applicable MAI–CR instruction its use is mandatory to the exclusion of any other form. Rule 20.02(e) further provides that the failure to give an approved instruction in the proper form constitutes error, *its*

*prejudicial effect to be judicially determined.* From the foregoing we arrive at the inescapable conclusion that since MAI–CR 7.62 was the applicable pattern instruction to be given in this case, the failure to include the general converse as a part thereof constitutes error.

However, at the risk of encouraging further excursions from the approved forms arrived at after long and strenuous labors by the committee and the Supreme Court in drafting and approving these instructions as patterns to be followed in all cases to the end that reversals of convictions on extremely technical grounds because of the phraseology of instructions or factual omissions therein should in the future be avoided and the jurors better understand the issues presented to them, we conclude that this error does not constitute prejudicial error requiring reversal of this conviction on this ground.

We arrive at our holding by reference to Instruction No. 6, a converse correctly following MAI–CR 3.06 which the trial court was required to give because tendered by the defendant. This Instruction conversed each and every affirmative element of the crime enumerated in Instruction No. 5—the State's verdict director—commencing with "If you do not find and believe from the evidence beyond a reasonable doubt *each and all of the following* . . ." and concluded with "then you must find the defendant not guilty." (emphasis supplied). We believe that this converse cured the error occasioned by omitting from the verdict director the common paragraph required by MAI–CR 2.04 and the Notes on Use following it. We caution against following this procedure in the future and reiterate that by our holding in this case we do not mean to encourage any individualization of the approved instructions by the trial courts of this State.

Both parties to this appeal direct arguments to the question whether it is prejudicial error for the trial court to give a 300 series instruction to a jury when the party

who would ordinarily be the one requesting the instruction objects to it. In the context of this case they direct their argument to the giving of Instruction No. 6.

■ However, we find it a question not properly before the court in this case and do not consider it, because it was not properly preserved for review despite the fact both parties briefed the question. No objection to Instruction No. 6 is contained in the defendant's motion for new trial and the instruction was one given by the court, as it was required to do, because tendered by the defendant. The effort to present this issue on appeal apparently arises out of a portion of the record made during the instruction conference. A careful reading of the record by either party would have obviated this effort.

The record contains the following with respect to the instruction conference:

"MR. DEWOSKIN: Your Honor, pursuant to article 20.03 on page, roman numeral number IX of Missouri's approved criminal instructions, I object to the instructions as given generally, and more specifically object to the instruction containing the property of the verdict directing containing the property containing personal property on instruction number 6. In that it is broader than the information filed by the state, and broader than the proof that could be legally obtained underneath the information filed by the state of Missouri, and I want to object for that reason. I continue my objection into the converse instruction which is a repeat of the elements in exactly the same form and spelling and spot as the verdict director given by the state. *I am referring to my instruction number 6, and by giving instruction number 6 I do not waive any error wich (sic) maybe contained in instruction number 5 which was prepared by the state of Missouri.*" (Emphasis supplied).

It is apparent from a careful reading of this objection that reduced to its simplest terms it constitutes an objection to Instruction No. 5 on the grounds that it enumerates therein certain items of property which the defendant argues were not included in the information in the case and what defense counsel wishes to make clear is that by incorporating that same property in his converse instruction which he tendered to the trial court he does not intend to waive any objection as to Instruction No. 5 on that score.

We conclude that counsel who prepared this case on appeal and who was not trial counsel was misled by the manner in which the objection was commenced by reference to Instruction No. 6 whereas in fact it was meant to refer to the state's verdict-director, Instruction No. 5, as a thoughtful reading of the objection made at the time demonstrates. Our conclusion in this respect is buttressed by the fact that it is these same factors contained in Instruction No. 5 that defendant preserved in his motion for new trial but abandoned by not briefing that contention in this court. Rule 28.02. Finally, Instruction No. 6 was defendant's own instruction tendered to the trial court and the trial court was required to give it. MAI–CR 3.02 Notes on Use.

We rule this Point against defendant.

The judgment of the trial court is affirmed.

CLEMENS, P. J., and STEWART, J., concur.