STATE of Missouri, Respondent,

v.

Edmund J. BRANSTUDER, Appellant.

No. 29685.

Missouri Court of Appeals,
Western District.

April 30, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 11, 1979.

James W. Fletcher, Public Defender, Platte City, for appellant.

John D. Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, C. J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge, Presiding.

Appeal from judgment on convictions by a jury of burglary, first degree, and assault

with intent to kill with malice aforethought. The questions are whether the court erred in failure to suppress statements made by defendant; and whether the court committed reversible plain error in failure to conform the verdict-directing instruction on burglary to MAI–CR 7.20. Affirmed.

On March 21, 1977, at approximately 7:30 p. m., Alvin R. Meadows, 82, was alone in his home in Riverside watching television. The house was unlighted; the doors were locked. He heard a noise at the rear of his house and went to investigate. As he approached the rear dining room door, it was kicked open and two men entered. He saw the two men as they stood in the kitchen by "the lights from the picture show sign" nearby. One of the men rushed him, hit him in the face, and knocked him to the floor. As he lay on the floor, one of the men hit him in the back and he felt severe pain. Both men disappeared; and, after waiting a few minutes, Mr. Meadows crawled to the telephone and called his son who, in turn, called the Riverside police. Mr. Meadows "couldn't identify the boys at all" except that they were taller than he at five feet, six inches.

Officer William Trotter responded to the call for help and went to the Meadows home and was met at the door by Mr. Meadows. Mr. Meadows complained of pain in his back, and examination revealed a knife sticking out of his back. The handle of the knife was missing from the blade. Officer Trotter administered first aid during which he noted a second knife wound. Mr. Meadows was sent by ambulance to the North Kansas City Hospital where the knife blade was removed. Officer Trotter recovered and preserved the blade as evidence after it was removed at the hospital.

Officer William Zerbe also responded to the Meadows home. He observed a knife handle on the kitchen floor which he preserved as evidence. It appeared to have been broken off the blade in the victim's back. Mr. Meadows had no knives with similar handles. Officer Zerbe recalled seeing a knife "which was very much in resemblance to the knife that was taken from the Meadows resident, approximately a month prior [February 23, 1977] in the apartment of Richard Logan" at 5129 Karen in Riverside, about an eighth or a quarter of a mile north of the Meadows residence. Officer Zerbe communicated this information to other Riverside officers, particularly to Captain Jerry Wingo.

Captain Wingo interviewed Mr. Meadows in the hospital shortly after the assault and obtained a description of his assailants as "two men in their late teens or early twenties," and "approximately three hours after the stabbing, we went to the residence and arrested Mr. Richard Logan for investigation of felonious assault and battery."

Captain Wingo learned that George and Edmund Branstuder were staying with Logan, and he returned to the Logan apartment at 11:30 a. m. the following morning, March 22, 1977. He found Edmund J. Branstuder, 19, and his brother George, 25, and arrested them for investigation of subject felonious assault and burglary. He also noted the presence of a jacket with blood on the front of it. Captain Wingo advised defendant of his "*Miranda* rights" at the Logan apartment and again prior to interrogation at the police station. Defendant stated that he understood the *Miranda* rights, and he was then interrogated from 12:07 P.M. to 12:31 p. m. Captain Wingo told defendant he probably would be requested to participate in a line-up for view by Mr. Meadows. "At that time he asked me again what condition Mr. Meadows was in. I informed him * * * that Mr. Meadows was listed in serious condition, but was expected to live. At that time Mr. Branstuder stated that he and his brother [George] had broken into Mr. Meadows' home * * * to obtain some copper wire from the electrical fixtures. * * * He stated that he had knocked Mr. Meadows down * * * [and] that he did stab Mr. Meadows." Captain Wingo recorded defendant's statement on tape and had it transcribed. He played the recording for defendant and showed him the typed statement. Defendant advised him that "he

could not read very well." Captain Wingo explained that the statement was the same as the recording, went over its substance with defendant, and asked him if it was correct. Defendant signed both its pages and initialed the *Miranda* warnings.

Defendant took the stand to deny stabbing Mr. Meadows and to state that he was under the influence of drugs at the time of his arrest and interrogation and did not remember making or signing any statements. He named his brother and Richard Logan as the parties who broke into the Meadows home.

George Branstuder testified that he broke into the Meadows home with Richard Logan and that Logan stabbed Mr. Meadows. He repudiated prior statements which implicated defendant. Among these was the recitation of facts upon his guilty plea in which defendant was named as coactor in the burglary and stabbing. Officer Zerbe stated that George Branstuder told him that defendant had stabbed Mr. Meadows.

Appellant contends the court erred in its failure to suppress his oral and written statements "in that any such statements were tainted fruit of * * * unlawful arrest * * * and the statement * * obtained one and one half hours after * * arrest * * * was a direct result of * * arrest." Appellant's thesis is that his warrantless arrest was unlawful because made without probable cause, *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); that but a brief interval passed between his arrest and thus tainted statement, *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and that presence of *Miranda* warnings did not dissipate the taint, *Brown v. United States*, supra, 422 U.S. 603, 95 S.Ct. 2254. See also *Davis v. Mississippi*, 394 U.S. 721, 726, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

Appellant's thesis does not provide a basis for reversal of his conviction.

Appellant recognizes that police officers may rely on information from other officers to supply probable cause for an arrest, *Whiteley v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); and that

the question of probable cause is to be determined upon all the evidence bearing on the question, *State v. Hohensee*, 473 S.W.2d 379, 380 (Mo.1971).

■ Probable cause for a warrantless arrest exists "when the facts and circumstances within the arresting officer's knowledge of which he has reasonably trustworthy information are sufficient to warrant a belief by a man of reasonable caution that the person to be arrested has committed a crime." *State v. Abbott*, 571 S.W.2d 809, 813 (Mo.App.1978). See also *State v. Wiley*, 522 S.W.2d 281, 287[1–3] (Mo. banc 1975).

■ The test was satisfied in this case by the following factors: At the time defendant was arrested, the police knew that the burglary and assault had been committed by two "boys" or young men, more than five feet six inches tall; that a knife similar to the assault weapon had been seen a month earlier in Richard Logan's nearby apartment on an occasion of his arrest; that defendant and his brother were staying at the Logan apartment; that some fifteen hours after the burglary and assault, defendant and his brother were at Logan's apartment; and that a jacket with blood on it was present.

■ If, *arguendo*, defendant's arrest was considered unlawful, his statements were not *per se* inadmissible because:

"Although under *Wong Sun v. United States* [supra] incriminating oral statements by an accused may be so intimately connected with the circumstances of an illegal arrest as to become tainted and inadmissible in evidence, that case does not hold that 'all oral statements are the fruit of the "poisonous tree" simply because they would not have been made but for the illegal actions of the police. * * the Court in *Wong Sun* * * * indicates the view that a statement which is shown to have been freely and voluntarily made without coercion, either physical or psychological, may be thereby purged of any stigma of illegality and the statement is admissible.'" *State v. Newell*, 462 S.W.2d 794, 797 (Mo.1971), quoting

**190**

from *United States v. Close*, 349 F.2d 841, 851 (4th Cir. 1965).

See also *State v. Johnson*, 530 S.W.2d 690, 693 (Mo. banc 1975).

The record demonstrates that defendant's statements were made voluntarily without coercion. He was advised of his constitutional rights. There was no exploitation of the arrest; nor was there any showing of coercion. There was some evidence of spontaneity of statement prior to interrogation. See *State v. Johnson*, supra.

■ Appellant contends the court committed plain and reversible error under Rule 27.20(c) by Instruction No. 6 on burglary, first degree, "insofar as the said instruction was given in improper form and [thus] * * * was prejudicial and denied appellant a fair trial."

Instruction No. 6 was in form MAI–CR 7.20, but it omitted the converse paragraph: "However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense."

The suggested error was cured in this case under Rule 20.02(e) because the court gave, at defendant's request, a converse instruction in form MAI–CR 3.06, directed specifically to the burglary charge. *State v. Knox*, 529 S.W.2d 455, 463 (Mo.App.1975).

Judgment affirmed.

All concur.