STATE of Missouri,
Plaintiff-Respondent,

v.

Tony Lee CAMPBELL,
Defendant-Appellant.

No. 40306.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 23, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 1981.

Application to Transfer Denied
April 6, 1981.

Helton Reed, Jr., Special Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, M. Hillel Finkelstein, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Chief Judge.

Tony Lee Campbell was convicted in the Circuit Court of the City of St. Louis of first degree murder § 559.005 RSMo. Supp. 1975, and was sentenced to life imprisonment. He appeals, raising three Points Relied On as grounds for reversal of his conviction. We affirm.

Mr. Campbell, hereinafter the appellant, does not challenge the sufficiency of the evidence to support the jury's finding; therefore a short statement of the facts supporting the verdict will suffice at this stage of the opinion.

Patricia Malone, 15 years of age at the time of this occurrence, September 13, 1976, came to her untimely demise in a vacant house at 3835 Cottage Avenue, in the City of St. Louis. Her nude body was found in the basement of the house sometime after noon of the date aforesaid. According to the autopsy report she had been dead for perhaps two or three days and the cause of death was a compound fracture of the skull with a fractured neck and hemorrhage retroperitoneal, i. e. hemorrhage inside the abdominal cavity, the peritoneum.

The police learned of Ms. Malone's death through an informant and went to the scene where they were met by Alva Murray and Regina McCurry, who later identified appellant as the murderer. Appellant was arrested at his home at approximately 1:00 p. m. the same afternoon, given his *Miranda* rights, and he confirmed that he had told three witnesses that he had killed Ms. Malone and that he had taken the three witnesses to view the body in the basement. He told the police, however, that he had only made up the story and was, in fact, innocent of the killing. Later that same day appellant, without request or encouragement from any of the police officers, asked for a piece of paper and a pencil and made a drawing of the intersection of Vandeventer and Lindell in the City of St.

Louis and told homicide investigator Joseph Marcinkiewicz that he could find what he was looking for at the northeast corner of those streets. A plastic bone handle of a knife or a fork, was found at this intersection and laboratory analysis of this item showed the presence of human blood on the handle.

The following morning the appellant repeated the statement he had previously made and when he was returned to his cell he related to a cell mate, James Hahn, that he had killed a young girl because she had refused to be a prostitute for him; that he had used an iron pipe to kill her and had thrown the pipe between some flooring. Subsequent investigation by the police at the house on Cottage Avenue following Mr. Hahn's relating his conversation with appellant, led to the discovery of a piece of pipe in the ceiling.

On September 15, 1976, appellant was again questioned and, after again being advised of his *Miranda* rights, requested a paper and pencil and drew what appeared to be a pipe, a knife, a fork, a razor, the body of a girl and three profiles of faces. Upon completion of this drawing he asked: "Are these what you are looking for?" One of the officers present, Officer McCoy, asked the appellant if the drawing represented the murder weapons and he replied "Yes." Appellant continued drawing and while doing so told the officers present that he had killed the girl because she was "messing around on him and he was in love with her and she was a prostitute for him." On the drawing representing the murder weapons, he wrote "I didn't do it."

Appellant took the stand in his own defense and denied that he had killed Ms. Malone.

■ Appellant's first contention, as we perceive it, is that on the date of the murder for which he was charged, there were three potential maximum punishments which could be imposed upon one found guilty of murder in Missouri; life imprisonment (§ 559.010 RSMo. 1969), death (§ 559.-005 RSMo. Supp.1975) or life imprisonment with no parole until he had served a mini-

mum of 50 years imprisonment (§ 559.011 RSMo. Supp.1975); but that it was error for the trial court to impose sentence upon him pursuant to the provisions of the latter section of the statute because said statute was not in effect on September 13, 1976.

This same question was decided contrary to appellant's position in *State v. Garrett*, 595 S.W.2d 422, 434[30] (Mo.App.1980) and *State v. Hanson*, 587 S.W.2d 895, 900[3] (Mo.App.1979). We rule this Point against appellant.

Appellant's next Point is that the trial court erred in overruling his Motion in Limine to quash the Indictment in this cause because he had been in custody for eight months before the Grand Jury voted this Indictment on April 14, 1977, and his constitutional guarantee to a speedy trial was thereby violated.

In his brief appellant makes reference to a prior indictment, but the record is devoid of any evidence of a prior indictment. The only indictment we have before us is the indictment of April 14, 1977, charging appellant with murder in the first degree, § 559.005 RSMo. Supp.1975. The only indication we have that there might have been a prior indictment is a reference to one in appellant's motion to quash filed on October 18, 1977, and a memorandum filed by the state wherein it is stated that he was, on September 16, 1976, indicted for the crime of murder in the first degree.

■ The ultimate responsibility for the preparation and filing of the transcript on appeal is, under Rule 81.12(a), upon the appellant. He has not complied with this requirement of Rule 81.12(a) and, therefore, we do not consider this possibility in disposing of appellant's claim that he was denied his right to a speedy trial.

■ Appellant was taken into custody on September 13, 1976, and we conclude, remained in custody thereafter. The indictment in this case was not filed until April 14, 1977, seven months and one day thereafter. However, appellant explains this hiatus between arrest and this indictment by

conceding that he was, in the intervening period, under indictment for this murder. What efforts he made, if any, to bring that case to trial on that indictment is not before us. In the state of the record we are unable to make a determination whether his constitutional right to a speedy trial between the date of his arrest and the voting of this indictment was, in fact and law, violated; we shall, however, consider this issue on the basis of the record we have before us as applicable to the period between April 14, 1977, and January 4, 1978, when the trial of this cause commenced.[1]

■ After the filing of the indictment in this cause appellant requested and obtained continuances of this cause on the following dates: August 22, November 7, and December 8, 1977. He took no affirmative action to bring this cause to trial prior to January 1, 1978. Where appellant fails to take affirmative action to obtain a speedy trial he is deemed to have waived that right. *State v. Harper*, 473 S.W.2d 419, 424[3] (Mo. banc 1971), and where he has contributed to the delay by asking for and being granted continuances he cannot later successfully allege the denial of his constitutionally guaranteed right to a speedy trial. *State v. Yates*, 442 S.W.2d 21, 24[3] (Mo.1969).

■ Further, time between arrest and indictment is not the sole criteria upon which the decision must rest. In *State v. Morris*, 501 S.W.2d 39, 41[5] (Mo.1973) a delay of sixteen months between indictment and trial was held not a denial of defendant's right to a speedy trial and this decision was recognized in *Morris v. Wyrick*, 516 F.2d 1387 (8th Cir. 1975).

■ We hold there is no merit to appellant's claim that his speedy trial rights were violated.

■ Appellant's third, and final Point, is that the trial court erred in overruling his motion to suppress the drawing of a two-pronged fork and a pipe which was received into evidence as State's Exhibit No. 1. The thrust of appellant's argument, as we understand it, is that after almost two days of incarceration and an hour and a half of interrogation, and more than forty hours after warrants were issued, he drew the picture "describing the murder scene" only after telling the officers present that he "felt that he needed help." From these circumstances, appellant argues that he cannot be considered as having waived either his right to remain silent or his right to have an attorney present during interrogation. In support of this argument he cites *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) for the proposition that where a person in custody who has been given his *Miranda* warnings and is undergoing interrogation indicates in any manner that he wishes to remain silent, the interrogation must cease because he has shown that he intends to exercise his fifth amendment privilege.

Appellant's motion to suppress this drawing was filed on December 12, 1977, and the hearing on the motion was conducted by the trial court on January 3, 1978. The only evidence adduced at this hearing was that presented by the state and was uncontradicted. Appellant offered no evidence on this issue. The evidence was that in every instance appellant was given his *Miranda* rights before he was interrogated; even in those instances where the police officers had him brought to their offices because he sent word to them that he wanted to talk with them. Before two of these periods of interrogation, including this one, appellant specifically stated that he did not want an

---

1. We not only do not have the first indictment appellant mentions, but we do not have any evidence that appellant made any effort to move that case along or contributed to its not being reached for trial during that period.

   We discern from appellant's argument in support of his first Point Relied On and the state's memorandum, that the decision in *State v. Duren*, 547 S.W.2d 476 (Mo. banc 1977) holding the death penalty punishment provided in § 559.009 RSMo. Supp.1975 upon conviction of Capital Murder, § 559.005 RSMo. Supp.1975 unconstitutional, was the reason the state re-indicted appellant. The *Duren* decision was handed-down on March 15, 1977, and this indictment was filed almost one month thereafter.

attorney. This drawing was, according to the evidence, made after appellant had sent word to the homicide office that he wished to make a statement, and after he was given his *Miranda* rights and after he assured the detectives that he understood his rights and did not want an attorney. There was no evidence before the trial court at the hearing on the motion to suppress which would bring *Mosley* into play.

■ Appellant also urges upon us that this drawing should have been suppressed because he was not taken before a magistrate within twenty hours. Section 544.260 RSMo. 1969 and Rule 21.11 (the Rule in effect at the time) mandate that a person arrested under a warrant should be brought before a magistrate as soon as practicable. But delay in bringing a person before a magistrate does not render the confession involuntary. *State v. Warren*, 406 S.W.2d 605, 607 (Mo.1966); *State v. Davis*, 400 S.W.2d 141, 150 (Mo.1966); *State v. Smith*, 588 S.W.2d 27, 31[2] (Mo.App.1979).

■ The state has the burden of showing that a confession, or in this instance a drawing implicating the defendant in the commission of the crime for which he is on trial, was voluntarily made by a subject in custody. That burden is met when the state makes a prima facie showing of voluntariness. The state need only show that at all stages of interrogation the defendant was informed of his constitutional rights, was capable of understanding them, and that no physical force, threats or coercive tactics were used to obtain the confession. *State v. Crowley*, 571 S.W.2d 460, 464[9] (Mo.App.1978).

■ We conclude that the trial judge, from the evidence presented on the Motion to Suppress, did not err in overruling the motion and admitting the drawing into evidence as State's Exhibit No. 1.

Judgment affirmed.

SNYDER and STEWART, JJ., concur.