STATE of Missouri,
Plaintiff-Respondent,

v.

Gregg Harry BERGER,
Defendant-Appellant.

No. 11759.

Missouri Court of Appeals,
Southern District,
Division One.

May 28, 1981.

John D. Ashcroft, Atty. Gen., Steven H. Akre, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Charles F. Johnson, Buffalo, for defendant-appellant.

TITUS, Judge.

The charged class C felonies of second degree burglary (§ 569.170)[1] and stealing (§ 570.030) occurred in April 1979 in Hickory County. Defendant was jury-convicted of the crimes on February 15, 1980, in Polk County after a change of venue and judge. Subject to a credit of 216 days spent in jail prior to conviction, the court sentenced defendant to confinement for a term of five years on each charge with the sentences to run consecutively. Ch. 558. Defendant appealed.

As the issues on appeal do not concern the sufficiency of the evidence to sustain the convictions, a brief resume will satisfy. George Mulderink discovered his pickup truck had been stolen after a quantity of personal property, valued at a "little over $3,000," had been surreptitiously removed from the bucolic home of Mr. and Mrs. Rushton. While talking to a deputy sheriff on a roadway regarding the auto theft, Mulderink espied his pickup being driven by defendant, accompanied by his brother.[2] A chase ensued, but the pickup was not overtaken until it was found abandoned and loaded with some of the items stolen from the Rushton home. Defendant and his brother were later apprehended. When a subsequent search was made of the residence of defendant and his brother, the authorities recovered additional property that had been stolen from the Rushtons. In November 1979, before the trial in the instant cause, defendant's brother had been convicted in Polk County of the burglary and stealing which occurred at the Rushton property. He had also been convicted of stealing the Mulderink pickup. At defendant's February 1980 trial, the brother testified that he and "a guy from Kansas City," not defendant, had committed the burglary and stealing. The brother also stated defendant had not been aware that the stolen pickup was loaded with items purloined from the Rushtons when he sped off in the truck to elude the pursuit undertaken by the deputy and Mulderink. Defendant's brother testified that defendant was ignorant of the nature of the load on the pickup because he, the brother, had secretly placed the items in the vehicle from their joint residence while defendant was occupied with another task. Testifying in his own behalf, defendant admitted stealing the Mulderink pickup but denied he was guilty of the burglary and stealing charges.

In this appeal defendant's first two points relied on relate to the alleged error of the trial court in denying his motion for a continuance filed February 14, 1980, and his motion for a continuance filed February 15, 1980. Concerning the motions and the court's denial thereof, the following history of the case is pertinent.

---

1. References to statutes and rules are to RSMo 1978 and Missouri Supreme Court Rules.

2. *State v. Berger*, 613 S.W.2d 448 (Mo.App. 1981).

July 11, 1979 – Present counsel appointed to defend defendant.

July 18, 1979 – Trial set for August 28, 1979.

September 19, 1979 – Trial reset for November 14, 1979.

December 6, 1979 – Trial reset for January 29, 1980.

January 16, 1980 – Trial reset for February 15, 1980 (date of actual trial).

To be noted is that the first motion for a continuance was filed on the day before the case had been set for trial for the fourth time. According to the first point relied on, defendant's reason for seeking a continuance was that his counsel did not have "sufficient time to prepare said case [for trial] because of his inability to consult with Defendant-Appellant on February 13, 1980." In the second motion, filed on the day of the trial and according to the second point relied on, the reason a continuance was sought was that counsel did not have "the opportunity to interview the main witness for the defense," i. e., defendant's brother.

■ Regardless of what circumstances existed two days before trial or on February 13 (with or without counsel's fault) which may have prevented the lawyer from consulting with defendant on that date, and irrespective of the reason which made the attorney aware on the day of trial of his lack of an opportunity to interview defendant's brother, the fact remains that some seven months before the time of actual trial the lawyer had been afforded the opportunity to consult with defendant, to interview defendant's brother and to make such other preparations as he deemed necessary to defend the charges. In criminal cases, applications for continuances are addressed to the sound discretion of the trial court and every intendment in favor of the trial court's action is indulged on appeal. *State v. Smith*, 586 S.W.2d 399, 401[1] (Mo.App. 1979). To induce an appellate court to reverse a conviction based upon the trial court's refusal to grant a continuance, it must be made to appear that the refusal resulted from a clear and certain abuse of discretion. *State v. Lane*, 551 S.W.2d 900, 906–907[14–16] (Mo.App.1977). The re-

countings, supra, attest that counsel had more than ample time to consult with the defendant and to confer with any necessary witnesses had any degree of effort to do so been employed. Under the circumstances in this case, the trial court would have abused its discretion only had it granted the continuances sought. The first two points relied on are denied.

Defendant's third point relied on states: "That the court erred, to the prejudice of Defendant . . ., by having him transferred to the Webster County Jail, after the Osceola, St. Clair County trial, with Defendant . . . being approximately three times as far away from his attorney and resulting in less consultation time. This being the case even though the Court knew that the Polk County Jail was the most centrally located place for this Defendant, including the fact Polk County was the County in which the Defendant-Appellant's next trial was set." This point, as do all the other points relied on in defendant's brief, appears with no citation of authority in complete disregard of the mandatory directions of Rule 30.-06(d). Also, the only reference to this point in the argument segment of defendant's brief is counsel's comment that the two motions for continuances, referred to under the first two points relied on, supra, "along with references made to these Motions in the transcript are self-explanatory and will prove to violate the Defendant-Appellant's right of constitutional due process."

■ Appellate courts are not obliged, except in circumstances not present here, to review points relied on which appear without any citation of authority and which are supported with no semblance of an argument. *State v. Dodson*, 556 S.W.2d 938, 951[33] (Mo.App.1977); *State v. Johnson*, 539 S.W.2d 493, 509[25] (Mo.App.1976), cert. den., 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). A point relied on should be sufficient in itself and an appellate court has no duty, as here required, to seek through the legal file and the transcript on appeal to discover the meaning of a point presented in an abstract fashion. *State v.*

*Yearwood*, 510 S.W.2d 43, 44[2] (Mo.App. 1974). Moreover, the point as written appears inaccurate. We take judicial notice of official highway maps and geographical facts. *State v. Vincent*, 582 S.W.2d 723, 725[3] (Mo.App.1979). The contents of the legal file herein attest that defendant's lawyer offices in Buffalo, Dallas County, Missouri. Webster County is south of and immediately contiguous to Dallas County; Polk County is west of and immediately contiguous to Dallas County. While the mileage difference between counsel's offices and the jails in the two counties may vary, it is not three times further from Buffalo to the Webster County jail than it is from Buffalo to the Polk County jail. Also, the second sentence of this point, as written, provides no clue as to how the place of confinement was prejudicial to the defendant or deprived him of the due process of the law. The third point relied on is denied.

Defendant's fourth and fifth points relied on: "4. The Court erred to the prejudice of Defendant ... by not declaring a Mistrial or immediately ordering a New Trial when the Court was made aware that at least two members of the jury panel saw Defendant in handcuffs and this fact was discussed by the jury during deliberations. 5. The Court erred, to the prejudice of Defendant ..., by not declaring a Mistrial or immediately ordering a New Trial when the Court was made aware that at least two members of the jury panel saw the Defendant ... handcuffed to another person [i. e., his brother] *who had already been convicted of being involved in the same case*, that the jury knew this second person, whom the Defendant ... was seen handcuffed to, had been so convicted and that this fact was discussed by the jury during deliberations. That this point of the Motion for New Trial is the most prejudicial to Defendant-Appellant's case."

These points relied on have this factual background. After the jury returned the verdicts, the members thereof were asked if anyone had seen defendant and his brother in handcuffs. Two jurors said they briefly saw the two men handcuffed together as they were being taken from the courthouse at the commencement of the noon recess. One juror said, "It really didn't mean anything, other than they were together, just saw them together." The other answered, "... it didn't have any bearing on the case. I thought that's the way things were done." Both jurors said the occasion had not been discussed in the jury room, although it "was just mentioned" after the jury had finished its deliberations and arrived at its verdicts. The court inquired of the entire panel if the fact defendant and his brother was handcuffed had "any effect on any of you or any of your verdicts," and concluded, "I assume from your silence that you all are answering that it did not have any effect on you."

■ "Numerous cases have recognized that a brief, inadvertent exposure to the jury of a handcuffed defendant while he is being taken from one place to another does not deprive the defendant of a fair trial. [Citations omitted]. Here, the defendant was being [taken from the courthouse at the beginning of] the noon recess. There is no complaint that ... appellant was manacled while the trial was in progress. The trial court is not to be faulted for the inquiry which it undertook following defense counsel's objection. This action was a sound exercise of discretion for the purpose of determining whether or not the incident had made any impression upon the jurors." *State v. Crawford*, 539 S.W.2d 633, 635–636[2, 3] (Mo.App.1976). The fourth and fifth points relied on are denied.

Defendant's sixth and final point relied on: "The statements made by the Prosecuting Attorney during the trial constituted the admission into evidence of the Defendant-Appellant's post-arrest silence which substantially affected the rights of the Defendant-Appellant and resulted in manifest injustice to the Defendant-Appellant."

■ We are again confronted with a point presented in complete disregard of the mandatory requirements of Rule 30.06(d). Not only does the sixth point relied on arrive barren of any citation of authority, it contains no hint as to what statements were

made by the prosecutor, why such statements constituted evidence of post-arrest silence or wherein those utterances affected some unspecified rights of the defendant. It would require a search through the legal file, the transcript on appeal and the argument portion of defendant's brief to arrive at what is specifically intended by the abstraction. We are not required to make such a search to ascertain the meaning of a point proffered in such a conclusory fashion and would be justified if we summarily dispatched it without consideration. *State v. Velas*, 537 S.W.2d 881, 883[1–4] (Mo.App. 1976).

But a more important reason exists for denying the point. Except in relation to questions not germane here, Rule 29.11(d) specifies that "[i]n jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial." The sixth point relied on, supra, is not contained in nor even mentioned in defendant's motion for a new trial. Consequently, it has not been preserved for appellate review. *State v. Shelton*, 544 S.W.2d 599, 600 (Mo.App.1976).

Our final consideration of the unpreserved point concerns the propriety and necessity vel non of reviewing, sua sponte, the point as plain error under Rule 30.20. A gratuitous search of the transcript and the argument in defendant's brief reveals defendant's complaint relates to the reference by the prosecutor, in questioning defendant on cross-examination and in his jury argument, that defendant had not declared his nonparticipation in the burglary and stealing until he testified at trial. No proper objection was made to the argument at trial. The trial questioning was not objected to for the reasons defendant advances on appeal. *State v. Futrell*, 565 S.W.2d 465, 467[1] (Mo.App.1978). In other words, defendant is now contending for the first time the questioning and argument violated his right to remain silent following arrest.

The plain error rule is rarely invoked by an appellate court and then only on a case by case basis to prevent manifest injustice or a miscarriage of justice. Exempli gratia, *State v. Nolan*, 595 S.W.2d 54 (Mo.App. 1980). "In order to invoke the plain error rule, there must be a sound, substantial manifestation, a strong, clear showing that injustice or miscarriage of justice will result if the rule is not invoked. The ordinary rules of judicial procedure cannot be abandoned. To do so would invite chaos. Only by adhering to the established rules will we have an orderly process. *State v. Meiers*, 412 S.W.2d 478, 480–481 (Mo.1967)." *State v. Quinn*, 565 S.W.2d 665, 676 (Mo.App. 1978).

No doubt it is improper to show a defendant's silence after his arrest to impeach his later version of the incident. *State v. Nolan*, supra, 595 S.W.2d at 56[1–6]. However, determination of the case at bar did not repose upon the credibility of the prosecutor's witnesses as opposed to the credibility of defendant's witnesses. No one disputed the occurrence of the burglary and stealing, admitted by defendant's brother, or that the stolen goods were found both in the pickup truck admittedly stolen by the defendant and in the residence jointly occupied by defendant and his brother. Only defendant's brother testified "a guy from Kansas City" committed the burglary and stealing with him. The state's cross-examination of defendant as to his trial position was brief—only two questions were asked of him regarding his belated defense; there was only scant reference to the matter, without objection, by the state in its jury argument. No persistent use was made of defendant's pretrial silence. We do not perceive any manifest injustice or miscarriage of justice in this case. As already noted, the two questions asked of defendant on the subject were not properly objected to, no objection was made to the state's brief reference to the matter in its argument and the question was not preserved for appellate review by its inclusion in the motion for a new trial. Under the circumstances peculiar to this case, we do not find plain error. Defendant's last point relied on is denied. *State v. Halk*, 524 S.W.2d 44, 48–49[8, 9] (Mo.App.1975).

Judgment affirmed.

GREENE, P. J., and FLANIGAN, J., concur.