**STATE of Missouri, Respondent,**

v.

**Albert GREEN, Appellant.**

**No. 12680.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 22, 1983.

Motion for Rehearing or to Transfer
to Supreme Court Denied
March 10, 1983.

Application to Transfer Denied
April 26, 1983.

John D. Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

Richard T. Martin, Martin & Harned, Gainesville, for appellant.

1. Statutory references are to RSMo 1978. Rule references are to Missouri Rules of Court, V.A. M.R.

TITUS, Judge.

Charged as a persistent offender under § 558.016–2 [1], defendant was jury-convicted of second degree burglary, a class C felony per § 569.170, and stealing, a class C felony per § 570.030. He was court-sentenced to imprisonment on each crime for a term of 10 years to run consecutively. Defendant appealed.

On appeal defendant has two points relied on: (1) Defendant was notified only two days before trial that the state intended to amend its information to state the charged crimes occurred August 24, 1981, rather than August 25, 1981, as originally alleged, and the trial court erred in denying his motion for continuance to permit him to secure attendance of alibi witnesses for the new date and (2) the trial court erred in overruling defendant's motion to suppress the identification testimony of Kenneth Coats and in overruling his trial objections to such testimony because the testimony was impermissibly tainted with suggestive police procedures making the in-court identification highly unreliable and extremely prejudicial, thereby depriving defendant of a fair trial.

 Whether or not an application for a continuance because of defendant's inability to present witnesses should be sustained is within the sound discretion of the trial court. Rules 24.09 and 24.10 require that applications for continuances on account of absent witnesses be in affidavit form and show certain particulars. The "Motion for Continuance" filed on defendant's behalf was not verified, neither did it undertake to show who the absent witnesses might be. It only averred that said unidentified witnesses would testify "that defendant was in Kansas City, Kansas on August 24, 1981 at the time the crime was committed." The motion was likewise deficient in not stating any grounds for believing the appearance or testimony of the alleged but unidentified

witnesses could be obtained within a reasonable time. The motion was deficient not only as to form but as to substance and the trial court did not abuse its discretion in denying a motion that came so far from complying with the applicable rules. *State v. McGinnis,* 622 S.W.2d 416, 420[6, 7] (Mo.App.1981). "A 'very strong showing' is required to induce an appellate court to interfere with a trial court's ruling on a request for a continuance." *State v. Winston,* 627 S.W.2d 915, 918[3] (Mo.App.1982). As no such showing was made here, defendant's first point relied on is denied.

Near 9 p.m. August 24, 1981, Kenneth Coats, half-owner of an appliance store in Mountain Grove, and a deputy sheriff was at the police station when advised that someone had broken into the store. Driving his white Ford Bronco with burning headlights, Coats reached the store in "Less than a minute." Mounted on poles at the east and west front ends of the building were two burning mercury vapor "big lights" whose beams were directed on the store for security purposes. Upon reaching the store Coats saw a man, later identified as defendant, coming from the building through a broken plate glass door carrying "two CB radios" and "a videotape player." In the glare of Coats' headlights and the security lights, defendant dropped the radios and tape player he had stolen from the store and ran to the side of the store where Coats stopped him with his vehicle. Defendant tried to hit Coats with a hammer but it was knocked from his hand when he struck the vehicle's CB antenna. This was the second time Coats got a "good look at" defendant. After dropping the hammer, according to Coats, defendant ran to a barbed wire fence behind the store where Coats again pursued and pinned defendant against the fence with the front of his Ford. After a short time, Coats testified, he backed from defendant and the fence because "I didn't want to hurt anybody." Defendant then escaped over the fence.

■ Ten days after the burglary defendant was in the sheriff's custody and Coats was asked to view a lineup consisting of six inmates. After viewing the lineup, Coats identified defendant. In his brief filed here, defendant says the lineup was unduly suggestive thus making the in-court identification of him by Coats highly unreliable and extremely prejudicial thus depriving him of a fair trial. The trial court found the lineup not to have been unduly suggestive, and on appeal we are limited to determining whether the evidence was sufficient to sustain its findings. *State v. Tippett,* 588 S.W.2d 742, 743[1] (Mo.App.1979). The record shows that at no time did the sheriff who conducted the lineup indicate to Coats who should be identified. The fact that the sheriff (and he couldn't remember doing so) may have called one or two of the men in the lineup, not the defendant, by name did not suggest they should be identified or eliminated from identification. There is nothing in the record to indicate any reason the composition of the lineup or the manner in which it was conducted was suggestive. *State v. Gaskin,* 618 S.W.2d 620, 623[2] (Mo. 1981).

■ But even assuming, which we do not, that Coats' lineup identification involved some element of suggestiveness, Coats had an ample independent basis for his identification. Applying the factors considered in determining Coats' in-court identification of defendant as set forth in *State v. Higgins,* 592 S.W.2d 151, 160[14] (Mo. banc 1979), we note the following. (1) Opportunity for Observation: On the night of the crime Coats got three "good looks" at defendant while defendant was in the glow of the two large spotlights and was bathed in the headlights of Coats' vehicle. Of course, defendant's attempted attack on Coats with a hammer would certainly alert Coats to make particular observations. (2) Degree of Attention: Coats' attention would be obviously acute upon the person he caught burglarizing his store and that person's fleeing attempts and undertaking to hit him with a hammer. (3) Accuracy of Description: The description of defendant given by Coats was very accurate and the record does not illustrate any inaccuracy. (4) Certainty of Identification: Coats stated

he had no difficulty in identifying defendant and the only reason he took the time he did at the lineup was to insure that no mistake would be made. (5) Interval Between Crime and Confrontation: The lineup was held 10 days after commission of the crimes. In *State v. Knox,* 529 S.W.2d 455, 462[8] (Mo.App.1975), it was held that a delay as long as six months may not render an identification invalid.

Viewing the totality of the circumstances it is reasonably clear that Coats' identification of defendant was supported by an independent basis and that the trial court did not err in denying defendant's motion to suppress.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.

