**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robbie BROOKS, Defendant-Appellant.**

**No. 13305.**

Missouri Court of Appeals,
Southern District,
Division One.

July 13, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 1, 1984.

Application to Transfer Denied
Sept. 11, 1984.

John D. Ashcroft, Atty. Gen., Bruce Farmer, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Margaret Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

TITUS, Judge.

After a two-day jury trial, defendant was found guilty of selling marijuana (also spelled marihuana) on April 29, 1981, in Springfield, Missouri, in violation of § 195.-020 [1] and was court-sentenced as a prior offender (§ 558.016) to imprisonment for a term of eight years. This appeal ensued.

Defendant does not here challenge the sufficiency of the evidence. Ergo we examine two points relied on that the trial court erred in overruling his motion to dismiss the charge because (1) the state denied him a speedy trial in contravention of the mandates of the Sixth Amendment of the United States Constitution and Art. I, Sec. 18(a) of the Missouri Constitution and (2) the state failed to bring him to trial within 180 days as required by § 545.780, a/k/a The Speedy Trial Act. For a chro-

nology of the actions below, see the appendix to this opinion. Also, bear in mind that the time for a speedy trial under the Sixth Amendment begins to run from the time of the indictment or information or arrest, whichever occurs first, *State v. Holmes*, 643 S.W.2d 282, 285[3] (Mo.App.1982), while the 180-day time for trial under The Speedy Trial Act begins to run from the time of arraignment. § 545.780–2.

As seen from the appendix hereto the delay in holding the preliminary hearing from December 21, 1981, as first set, to December 28, 1981, when it was held, was not the state's fault but resulted from a mutual agreement of the parties. The trial was not held February 8, 1982, as first set, because of defendant's request for a continuance to permit securing depositions of alibi witnesses residing in California, which depositions were not actually obtained until much later, in August and December of 1982. While the state announced ready on June 21, 1982, that setting was postponed to July 19, 1982, at defendant's request. We do not know what happened to the last mentioned setting but it obviously was continued and it may be assumed the fact defendant had not obtained the California depositions was a factor in the continuance. The trial setting for October 12, 1982, was continued at defendant's request until December 6, 1982, and, as defendant was at the latter date still engaged in the taking of depositions, further continued to February 16, 1983. However, before the last two setting dates occurred, defendant's counsel was permitted to withdraw and on November 19, 1982, the public defender was appointed in his stead. On February 15, 1983, defendant's prior request for a change of judge was sustained and on February 16, 1983, the last day the cause was set for trial, defendant filed (1) an application for a continuance and (2) a motion to dismiss the charge because his right to a speedy trial had been violated. These motions were overruled and after defendant's co-defendant was granted a severance, the

---

**1.** Statutory and rule references are to V.A.M.S. and V.A.M.R.

cause of the latter went to trial on February 16, 1983. The state's March 3, 1983, request for a trial setting of defendant's case for March 14, 1983, was answered by yet another continuance request by defendant on March 10, 1983. The latter motion was overruled March 11, 1983, on the condition defendant's counsel was not engaged in another trial on March 14, 1983. As he was not, the case went to trial on March 14, 1983.

■■■ The foregoing and the appendix hereto attest that roughly 70% of the delay in bringing defendant to trial (who was free on bond all the while) was directly caused by defendant himself. The guiding concepts used in determining defendant's Sixth Amendment rights to a speedy trial are set forth in *Holmes*, supra at 286–287, one of which is whether defendant made a timely assertion of his right to a speedy trial. As seen from the above chronology and that recited in the appendix, defendant did not once take any affirmative action to acquire a speedy trial. Instead and to the bitter end, he made repeated requests for continuances. When such occurred he is deemed to have waived his right to a speedy trial. Where, as here, defendant repeatedly caused trial delay by continually asking for and being granted continuances, he may not be heard to successfully allege denial of his constitutionally guaranteed right to a speedy trial. *State v. Campbell*, 612 S.W.2d 371, 374[5, 6] (Mo.App.1980). The constitutional right to a speedy trial is neither a guarantee of a prompt trial nor a trial instanter and there are decisions holding that delays of many months or even years are not intolerable. E.g. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Harper*, 473 S.W.2d 419 (Mo. banc 1971). As apparently then required by § 545.780–3(5)(a), the trial court in the instant matter dutifully set forth in the record its reasons for finding that the ends of justice served by granting defendant's various requests for continuances outweighed the best interest of the public and the defendant to a speedy trial. The Missouri Supreme Court in the recent case of *State of Missouri v. Jerry Lloyd Collins*, 669 S.W.2d 933 (Mo. banc 1984), described Missouri's speedy trial act as a statute that "has no teeth." Although the dissent to that opinion described the absence of teeth as "far more attributable to this Court's dentistry than to any deficiency in the statute," the courts in the future should not be encumbered with wrestling that particular law as it was repealed by H.C.S.S.C.S.S.B. 602, 82nd General Assembly, 2d Session (1984) and replaced by a provision putting the burden on defendant to request a trial. (Governor signed and approved new law June 7, 1984). Nonetheless, defendant's total inertia in seeking trial and his overt activities in repeatedly acquiring continuances belie the assertions advanced in the two points relied on which are denied.

■■■ In another point relied on defendant contends the trial court erred in overruling his motion for continuance filed March 10, 1983, after the cause was set for trial on March 14, 1983. The application filed March 10, 1983 was at least defendant's seventh such application and the third motion for a continuance filed on his behalf by the public defender after the latter's appointment on November 19, 1982. In part, Rule 24.09 provides "An application for a continuance shall be made by a written motion *accompanied by the affidavit of the applicant or some other credible person ...*" (Emphasis supplied). Contrary to the mandates of the rule, the application in question was not verified and defendant's failure to accompany the motion with an affidavit showing good cause therefor was sufficient reason for the trial court to deny it. *State v. Diamond*, 647 S.W.2d 806, 808[2] (Mo.App.1982); *State v. Bolden*, 525 S.W.2d 625, 632[7] (Mo.App. 1975). Moreover, it is well established that an application for a continuance is addressed to the sound discretion of the trial court whose exercise thereof will not be disturbed upon appeal unless it clearly appears that discretion has been abused. *State v. Winston*, 627 S.W.2d 915, 917[1] (Mo.App.1982). When this court is asked to review the discretion exercised by the

trial court in refusing a continuance request, every intendment in favor of the trial court's action is indulged [*State v. Gaskin*, 618 S.W.2d 620, 626[8] (Mo.1981); *State v. Berger*, 618 S.W.2d 215, 217[1] (Mo.App.1981)] and a very strong showing is necessary to induce an appellate court to interfere with the trial court's ruling. *State v. Green*, 647 S.W.2d 902, 904 (Mo. App.1983). As no such showing was made, defendant's point is denied.

In another point relied on defendant contends the trial court erred in not complying with the jury's request to have in its possession during deliberations certain items involved in the cause. As requested, the trial court sent to the jury an April 1981 calendar and defendant here concedes that the trial court properly refused to give the jury Police Officer Foster's report and synopsis as they had not been offered or admitted into evidence. Therefore, in this court defendant's complaint is that the trial court erred in not giving the jury (1) State's Exhibit 2—the marijuana sold to Officer Foster, (2) Defendant's Exhibit E—the telephone bill of defendant's mother and (3) the depositions of defendant's witnesses Bob and Rhonda McMillan.

 A jury, as a matter of right, may not take exhibits into the jury room and whether a jury may do so rests within the sound discretion of the trial court. *State v. Connell*, 523 S.W.2d 132, 138[15–16] (Mo. App.1975). To constitute an abuse of discretion the act must be untenable and clearly against reason and must work an injustice. *State v. Williams*, 643 S.W.2d 3, 4[1] (Mo.App.1982). The marijuana exhibit, the substance defendant was accused of selling, had been passed to and inspected by the jury during trial. As the jury had seen the exhibit and it was only one item of the total evidence in the case, we cannot hold the trial court's refusal for it to be taken to the jury room constituted an abuse of discretion. *State v. Sanders*, 541 S.W.2d 530, 534[6] (Mo. banc 1976).

 Defendant's defense was alibi—that he had been in Hayward, California, on April 29, 1981, the date he allegedly sold the marijuana in Springfield, Missouri. Defendant's Exhibit E, a telephone bill, was identified by defendant's mother to show she had placed a call from Springfield to Hayward on May 1, 1981. Both defendant's mother and brother testified the call was to defendant and they had spoken to defendant on that date. To send to the jury room only Exhibit E would certainly unduly highlight and emphasize that particular evidence. We find no abuse of discretion on the part of the trial judge in refusing the jury access to that exhibit.

 As to the court's refusal to let the jury have the depositions of defendant's witnesses, it is to be observed that the depositions were not read in their entirety and neither were they marked as exhibits or admitted into evidence. We do not have the entire depositions before us and do not know if the unread portions thereof contained objectionable questions and answers. But experience prompts the assumption objectionable material may have been present therein. Nevertheless, the use of the depositions at trial simply took the place of testimony of live witnesses and, therefore, was testimonial in nature. Generally, exhibits (and the depositions were not exhibits) which are testimonial in nature may not be given to the jury during their deliberations [*State v. Evans*, 639 S.W.2d 792, 795[4] (Mo. banc 1982)] and the trial court has discretion to refuse a request of the jury to be allowed to read only a part of the total testimony. *State v. Harvey*, 641 S.W.2d 792, 801[12] (Mo.App. 1982). Defendant's point is denied.

Defendant's final point relied on is that the trial court erred in failing to sustain his objections to the cross-examination of defendant's mother by the state and in failing to sustain his objections to the state's rebuttal witness, a Missouri probation and parole officer, because the cross-examination and the rebuttal testimony revealed that defendant was under restrictions not to leave the state of Missouri on the date the alleged crime was committed and because such testimony was evidence that defendant had been convicted of a crime

unrelated to the crime for which he was then being tried.

As previously noted, the crime charged was allegedly committed in Springfield, Missouri, on April 29, 1981. Defendant's alibi defense was that he was in Hayward, California, at that time. Hazel Brooks, defendant's mother and a witness for the defense, testified she had talked via telephone from her Springfield home to defendant in Hayward on May 1, 1981, and identified a telephone bill showing the long distance charge she had incurred in calling Hayward on that date. On cross-examination the first question asked of Mrs. Brooks by the prosecutor was "Ma'am, on May 1st, 1981, didn't you know that your son was not supposed to leave the State?" Before the mother could answer and out of the jury's hearing, defense counsel moved for a mistrial and objected to the form of the question because it was argumentative and called for a conclusion and because of its prejudicial effect in suggesting the defendant was involved in some other unrelated crime for which he was on parole or probation. Albeit the court refused the mistrial and sustained the initial objections, the prosecutor thereafter, over repeated objections, was permitted to unrelentingly inquire as to restrictions placed on defendant "for leaving the State." Finally, Mrs. Brooks recounted that defendant had told her "Officer Snowden" or "his office" had given him permission to leave the state of Missouri. No other subject than this was mentioned in the state's cross-examination of the witness.

Over defendant's objections and motion for a mistrial, Officer Snowden was permitted to testify as a rebuttal witness for the state on the condition that he did not identify himself as a probation or parole officer. When Snowden took the stand he acknowledged he knew defendant and that in April and May of 1981 defendant was restricted from leaving the state of Missouri. Officer Snowden also stated he worked "in an office" where records were maintained concerning "permission given to leave the State to persons who have been restricted from leaving the State." The witness recounted that such records "were made in the regular course of business" of his office and that in consulting those records there was nothing to show that defendant had ever been issued a travel permit or given permission to leave the state of Missouri.

Defendant did not testify and no witness testified concerning his character or reputation. Thus it would have been error for the prosecution to attack the character of the defendant when the issue had not first come into esse by the defendant himself. *State v. Thurman*, 521 S.W.2d 773, 777[4] (Mo.App.1975). We perceive little difference, if any, between a direct attack on defendant's character and a repetitious showing via cross-examination of Mrs. Brooks and the direct examination of Officer Snowden that when defendant was said to be in California he was guilty of some transgression against the law for having violated a restriction which confined his whereabouts to the state of Missouri.

Though he did not identify himself as a probation and parole officer, Snowden was repeatedly referred to as "Officer Snowden" during the cross-examination of defendant's mother. His testimony that he had not given defendant permission to leave Missouri and that the regular business records maintained by his "office" showed that defendant had never been given permission to leave the state would clearly indicate to the jury, as the trial judge openly feared, that defendant had earlier been convicted of a crime unrelated to that for which he was then on trial. No other conclusion has been suggested to us. The state's argument that evidence of the restriction placed on defendant from leaving Missouri was relevant to rebut his alibi defense misses the mark inasmuch as such evidence does not speak to the issue of whether defendant, in fact, did or did not depart from Missouri to go to California as recounted by his witnesses. The mere violation, if so, by defendant of parole and probation restrictions does not, in and of itself, prove or disprove defendant was in

fact in Springfield selling marijuana on the date charged.

▆▆▆▆ The defendant in a criminal case has the right to be tried only for the crime with which he is charged. Evidence of offenses unrelated to the cause on trial violates that right as it may result in a conviction based upon crimes for which the defendant is presently not being tried. The proof of separate and distinct crimes is inadmissible and constitutes error unless it has some legitimate tendency to establish that defendant is guilty of the crime with which he is charged. *State v. Shaw*, 636 S.W.2d 667, 671–672[4] (Mo. banc 1982). There was no showing in the instant matter that the crime involved herein had any connection whatever to the previous crimes for which defendant had been convicted and was then on probation. In fact, the information in the present action charging defendant as a prior offender alleged that on April 6, 1979, or two years before the marijuana violation occurred, defendant had been found guilty of second degree burglary and stealing. Evidence of other crimes if erroneously admitted, as here, is presumed to be prejudicial. *State v. Maddox*, 657 S.W.2d 719, 721[8] (Mo.App.1983). "Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt and the evidence should be rejected." *State v. Carter*, 475 S.W.2d 85, 88 (Mo. 1972), quoting *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954). See also, *State v. Brown*, 670 S.W.2d 140 (Mo.App. 1984), and cases there cited. For these considerations and reasons just observed, the judgment is reversed and the cause remanded for a new trial.

FLANIGAN, P.J., and GREENE and CROW, JJ., concur.

## APPENDIX

| Date | Action Taken | Elapsed Days | |
| --- | --- | --- | --- |
| | | Sixth Amend. | § 545.780 |
| 12–10–81 | Defendant arrested and released on bond. Preliminary set for 12–21–81 | 1 | 0 |
| 12–18–81 | By agreement preliminary continued to 12–28–81 | 9 | 0 |
| 12–28–81 | Preliminary held defendant bound over for arraignment on 1–8–82 | 19. | 0 |
| 1– 8–82 | Defendant arraigned, pleads not guilty, trial set for 2–8–82. Bond continued | 30 | 1 |
| 1–27–82 | Court receives letter from defendant's counsel indicating need to depose alibi witnesses in California during the week of 2–15–82. Case continued at defendant's request so attorney may go to California to depose alibi witnesses | 49 | 20 |
| 6–21–82 | State announces ready for trial. Cause continued to 7–19–82 at defendant's request | 195 | 166 |
| 8–14–82 | Deposition of defendant's witness taken in California | 249 | 220 |
| 9– 9–82 | Deposition filed | 275 | 246 |
| 10–12–82 | Trial setting for 10–18–82 continued to 12–6–82 at defendant's request | 308 | 279 |

| Date | Action Taken | Elapsed Days Sixth Amend. | § 545.780 |
|---|---|---|---|
| 11–19–82 | Defendant's counsel granted leave to withdraw. Public defender appointed for defendant | 346 | 317 |
| 12–17–82 | Deposition of defendant's second out-of-state witness taken | 374 | 345 |
| 2– 9–83 | Defendant files request for change of judge | 428 | 399 |
| 2–15–83 | Defendant's request sustained. Case assigned to Division 3 | 434 | 405 |
| 2–16–83 | Defendant's motion for continuance and to dismiss for alleged violation of 180-day rule filed and overruled | 435 | 406 |
| 2–17–83 | Deposition of defendant's witness taken 12–17–82 filed | 436 | 402 |
| 3– 3–83 | State's letter to court asking trial setting for week of 3–14–83 | 450 | 421 |
| 3–10–83 | Defendant files motion for continuance | 457 | 428 |
| 3–11–83 | Defendant's motion for continuance overruled and trial set for 3–14–83 | 458 | 429 |
| 3–14–83 | Trial begins | 461 | 432 |