**STATE of Missouri, Plaintiff-Respondent,**

v.

**Sammy Lee CASEY, Defendant-Appellant.**

No. 13631.

Missouri Court of Appeals, Southern District, Division Three.

Dec. 11, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 28, 1984.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Wesley D. Coleman, Asst. Public Defender, Caruthersville, for defendant-appellant.

TITUS, Judge.

As a prior offender, defendant was court-tried and adjudged guilty of the class A felony of first degree assault by attempting to kill or cause serious physical injury to Charles Versey by shooting him with a

deadly weapon. § 565.050–1.(2) and 2.[1] Defendant was sentenced to imprisonment for a term of 15 years to be served consecutively to another already imposed sentence. Defendant appealed.

In substance, the evidence favorable to the state was that victim Versey went into a Caruthersville tavern and poolroom near 11 p.m., July 15, 1983. After standing at the bar a few minutes, Versey noticed defendant staring at him from a table in the saloon section of the establishment. Versey moved to another part of the bar, ordered a drink and soon saw that defendant had left the tavern. Another witness observed defendant, once he left the building, exchange a red T-shirt for a white one and place a ski mask over his head and face before re-entering the bar. Once again inside the tavern, the masked man produced a pistol and shot Versey in the jaw and left side of the body before departing the premises. The operator of the establishment was in the poolroom section of the building when he heard the gunshots. He went outdoors through the poolroom door where he saw defendant go towards the corner of the building, stop and remove the head covering before looking back. Four days later on July 19, 1983, police officers went to defendant's place of employment to arrest him for shooting Versey. Upon seeing the officers approaching, defendant took flight only to be apprehended at gunpoint some 50 feet from where he commenced his run. More evidence will be later recast when necessary to comprehend the two points relied on presented in this appeal.

Defendant's first point relied on has this factual background. On September 14, 1983, defendant filed a "Motion for Ballistics Test" whereby he prayed the state be ordered to deliver to the SEMo Crime Laboratory for ballistics testing the bullet slugs removed from Versey's body and the pistol taken from defendant when he was arrested. The motion also asked that defendant be furnished a report concerning the result of such testings. The motion was granted

September 20, 1983, and the state delivered the necessary items to the laboratory. However, neither the state nor the defendant had received such a report when the cause was tried December 14, 1983. Defendant candidly admits in his brief that the state did not deliberately withhold the results of the testing, but does accuse it of not being diligent enough to have the results available by trial time.

Before any evidence was received on the morning of trial, defense counsel addressed the court: "Judge, I think we need some ruling from you on what we're going to do about this ballistics test.... I feel that the defendant would be justified ... in asking for a continuance. I think that if we could come to an arrangement with the State whereby no mention of the gun or the attendant circumstances in which the gun was obtained by the State, be—not be permitted to be entered into evidence, I believe we could proceed here this morning." Following extended colloquy between court and counsel, the court repeatedly ruled the state was to make no reference that defendant was possessed of a gun at the time of his arrest and that such a fact would not be considered by the court in determining defendant's guilt or innocence. After the prosecutor told the court he intended to show the circumstances of the arrest, sans any mention of defendant being armed, to "Show flight", defense counsel, without stating any meaningful reasons, again stated he was asking "the Court to continue this case until we get ... something from the crime lab." Nevertheless, after being told again and again by the trial court the state would not be permitted to offer any evidence "concerning any weapon that the defendant had ... when he was arrested," defendant's counsel in a continuing and incomprehensible manner concluded: "Well, in effect, Judge, I think the prosecution and I have entered into a stipulation, so to speak, maybe.... We're going to forget the gun but I would not enter into anything of that nature if he proves that—fleeing. Because

---

**1.** Statutory and rule references herein are to V.A.M.S. and V.A.M.R.

then I have the right to introduce the evidence about the gun if I choose to." At trial, in accordance with the court's ruling, supra, no mention was made of the gun found on defendant when he was arrested.

In toto, defendant's first point relied on reads: "The trial court erred in that it did not grant the defendant a continuance because the failure to do so resulted in the defendant not having available to him the results of a ballistics test, which the court had ordered the State to have conducted, of a pistol found on defendant upon arrest for the instant charge, thereby precluding the defendant from being able to introduce the pistol and ballistics results into evidence to show that defendant's pistol was not the one used in the offense for which he was on trial and to rebut State's evidence of flight."

Initially we observe, sua sponte, anent the point relied on two assumptions wholly unsupported by any evidence. The first unfounded assumption is that the ballistics test, the results of which were never known, did, in fact, reveal that the pistol taken from defendant upon arrest was not the one used in the shooting. Also, even assuming the pistol used in shooting Versey and that found on defendant when arrested were different, the second unfounded presupposition in the point is that such fact, if so, would rebut the state's evidence of attempted flight at the time of arrest. The question of whether defendant did or did not attempt to flee from the arresting officers, would not be resolved by showing that a gun different from that taken from defendant was used in the shooting.

▮ Rule 24.09 mandates that "An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally." In the dialogue between court and counsel concerning this matter, supra, no application, oral or otherwise, was initially made for a continuance because the lawyer simply expressed a belief that defendant would be justified in asking for a continuance. However, if the lawyer's later ambiguous oral expression that he was asking for a continuance until "something [was obtained] from the crime lab" be considered an authentic application for a continuance, that too must fail. Defendant's failure to file the request in writing together with an affidavit showing good cause as required by Rule 24.09 is sufficient ground for denying the application. *State v. Diamond,* 647 S.W.2d 806, 808[2] (Mo.App.1982). Even if the application here had been in the proper form, which it was not, whether or not an application for a continuance should be sustained is within the discretion of the trial court and a very strong showing, absent here, is required to cause an appellate court to interfere with the ruling of the court nisi on a request for a continuance. *State v. Green,* 647 S.W.2d 902, 903–904 (Mo.App.1983); *State v. Winston,* 627 S.W.2d 915, 918[3] (Mo.App.1982). Defendant's first point relied on is denied.

Defendant's second and final point relied on states: "The trial court erred in that it denied defendant's Motion for Judgment of Acquittal at the Close of All of the Evidence and Motion for New Trial because the evidence is in such conflict in material respects that it does not rise to the level of substantial evidence and is insufficient to prove beyond a reasonable doubt that the defendant attempted to kill or cause serious physical injury to Charles Versey by shooting him."

▮ Any reader of the point will be quick to see that it has been penned in complete disregard of the mandates of Rule 30.06(d). Nowhere does the point attempt to advise "wherein and why" the evidence in unexplained material respects was in conflict or "wherein and why" the evidence, whatever it was, failed to rise to the level of substantial evidence. Also, the point neglects to say "wherein and why" the evidence was insufficient to prove beyond a reasonable doubt that defendant attempted to kill Versey or cause him serious physical injury by shooting him. We

have no duty to seek through the transcript or the argument section of defendant's brief to come by an understanding of points written contrary to the commands of the rule. As written, the point preserves nothing for appellate review. However, as this court, contrary to Rule 30.09, did not afford defendant a second chance to do properly that which he should have done in the first instance, we will briefly review what we assume the point to mean by referring to the transcript and argument. *State v. Gamble,* 649 S.W.2d 573, 576[4, 5] (Mo.App.1983).

One segment of the argument to this point is the conclusion that defendant's testimony and that of the woman with whom he was living showed that defendant was at the woman's house at the time of the shooting and it was, therefore, impossible for defendant to have committed the charged crime. In substance, defendant asserts the evidence adduced by the state and summarized in the second paragraph of this opinion, supra, is so contradictory and composed, in part, of the testimony of an ex-convict, that it does not constitute substantial evidence to prove defendant guilty beyond a reasonable doubt. Defendant, in effect, is accusing the trial court of error in selecting the state's testimony over that proffered by the defense. Such overlooks that the credibility of witnesses is for trial court determination. *State v. Hankins,* 599 S.W.2d 950, 953[1] (Mo.App.1980). In deciding if the charge against defendant was proved, we are required to view the evidence and the proper inferences flowing therefrom in the light favorable to the state. *State v. Buffington,* 588 S.W.2d 512, 514[1] (Mo.App.1979). The trier of the facts, be it court or jury, and here it was the court, had leave to believe or disbelieve all, part or none of the testimony of any witness or to accept or reject in whole or in part such testimony just as a court or jury may find the same to be true or false when considered in relation to the other testimony and circumstances of the case. *State v. Lieberknecht,* 608 S.W.2d 93, 98[3] (Mo.App.1980). Also the court may reject testimony albeit no contrary evidence is shown.

*Johnson v. State,* 615 S.W.2d 502, 505[2] (Mo.App.1981). Predicated upon these principles we cannot agree with defendant's assertions which are, in effect, that we should totally ignore the state's evidence and accept in toto that proffered by the defense.

Also under the second point relied on, defendant contends the state's testimony was so filled with inconsistencies and contradictions as to be self-destructive and, hence, not supportive of a finding of guilty. What defendant really relies on from reading his argument, is that there were inconsistencies and contradictions between original out-of-court accountings of certain witnesses to the investigating authorities and what said witnesses testified to at trial. As Somerville, P.J., astutely distinguished in *State v. Burns,* 671 S.W.2d 306, 311–312[8, 9] (Mo.App.1984), there is a material difference between that of which defendant here complains and the infrequently encountered rule of "destructive testimony" or "destructive contradictions." As made clear in the reported opinion, the rule anent "destructive testimony" or "destructive contradictions" applies only to the respective elements of a witness's testimony *at trial*—not to contradictions between trial testimony and pretrial statements made during preliminary out-of-court investigations. Since defendant's complaints regarding the alleged contradictions and inconsistencies are totally outside the perimeter of the rule, such complaints are denied.

Judgment affirmed.

CROW, P.J., PREWITT, C.J., and HOGAN and MAUS, JJ., concur.