STATE of Missouri, Respondent,

v.

Leon Joseph HASELHORST, Appellant.

No. 56125.

Supreme Court of Missouri,
Division No. 1.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Robert D. Kingsland, Jefferson City, for appellant.

FINCH, Alternate Judge.

This is an appeal from a conviction for robbery first degre wherein the court, after required findings under the Second Offender Act, assessed punishment at imprisonment for eight years. We affirm.

The questions presented for decision are (1) whether there should have been a judgment of acquittal on the basis that the evidence merely placed defendant at the scene and was insufficient to show that he did anything to further commission of the offense and (2) whether a motion to suppress the in-court identification by eyewitnesses West and Cunningham should have been sustained on the basis that the state was obligated to conduct a lineup in the presence of such witnesses before they saw him in the courtroom at his preliminary hearing.

On the afternoon of June 4, 1969, Cunningham's Grocery and Service Station, located at Marshall Junction in Saline County, was robbed. One of the owners, Dorothy Cunningham, was forced at knife point to give the robbers approximately $25 in cash and several pairs of sunglasses.

Miss Cunningham testified that three young men came into the store at about 11:30 A.M. on June 4, 1969, and purchased some cigarettes and pop. The three men were in a "brownish or maroon" car with a Kansas license. She stated positively that defendant was one of the three.

That afternoon, at about 2:15 to 2:30, some men entered the store and after Miss Cunningham waited on them and went to the cash register to make change, they said, "This is it. This is a stickup. We want your money." She turned around and two men were there, one with a knife pointed at her, which he held to her neck. At one point, Miss Cunningham testified that all three boys were in the store during the robbery, but on cross-examination she testified she could not say definitely as to the number in the store. She definitely recalled seeing two. She couldn't definitely say that defendant was one of those two.

Miss Cunningham testified that Carl West, a Kansas City newspaper carrier, entered the store during the robbery. Someone struck him and knocked him to the floor. After the robbery, the men then went out the front door, warning that if anyone made a move or said anything, they would be killed. They asked Miss Cunningham if there was a telephone and were told that there was one in the filling station next door. One of the men went over there and cut the wires, after which they left in the same car that they had been in that morning.

Carl West testified that he was going to the store to get some strawberries. As he approached the store, a man standing by an "orangeish-red" automobile of the Ford family asked him about a certain route. West glanced back over his shoulder at the man and suggested he come on in as Miss Cunningham had been there for years and could tell him. West did not observe him closely at that time and was not sure whether the man was defendant or Monteer (another of the men later prosecuted for participating in the robbery).

West went in the door and observed two men, one of whom was holding a knife on Miss Cunningham. Just about that time, West felt a blow to his head. His ear and cheekbone were struck and injured and his dentures were broken. He could not see who struck him. West fell to the floor, where he remained sitting for what he estimated to be five minutes. At first, he was dazed and the floor seemed to rock, but he got over that and while sitting on the floor he observed one man get into the cash register while the other held the knife on Miss Cunningham. On their way out, the men asked for his money. He gave them his green money (about $7.00) and some checks which they dropped back on the floor. When asked how many were involved in the robbery, West said: "Three; that is, inside." He identified defendant as one of the three. While he was on the floor, this third man was to his right, blocking the door he had entered. He testified, "Well, along later in the robbery, this man here was definitely standing at the door when I got a better look at the door I had just entered." He looked separately at all three men while he sat on the floor.

Later that afternoon, a state trooper who had received a report of the robbery and was driving on the highway, met a rust colored Ford Falcon sedan occupied by three persons. The car had a Kansas license but he could not identify the three persons as they passed by. This rust colored Ford was heading away from the scene of the robbery and the officer belived it to be the car he was looking for. Later, he found that the car was wrecked about a mile and a half south of where he had seen it, and the three men had fled into the woods.

The Sheriff of Pettis County testified that he and a trooper had tried to catch a 1966 Falcon, but when they arrived at the scene, it had been wrecked and the occupants had fled. The car had a Kansas license and the back window had been shot out.

A manhunt followed and three persons were apprehended, one that evening and two the next day. One of the latter was defendant. He was fingerprinted and his fingerprints corresponded to the fingerprints lifted from the wrecked Ford Falcon. Miss Cunningham, at the trial, identified a photograph of this car as looking like the car she had seen in front of her store, but the photograph was not in color and she could not positively identify the car on the basis of its color.

■ Defendant's brief says that the only positive identification of him at the trial was by Carl West. He attacks that identification on the basis that West was dazed after he was hit and the floor rocked, and furthermore West could not describe the clothing or the shoes worn by the person he stated was defendant. The brief also mentioned that no loot was found, the knife was found on one of the other men, and that there was some conflict over identification of the car. However, these went only to the weight of the testimony, and the jury resolved that against defendant. In effect, defendant's brief recognizes this when it says that the evidence of the identifying witness placed defendant at the scene of the robbery, but that there was a complete lack of evidence to show that defendant associated himself with the venture or affirmatively participated therein or forwarded the effort or consciously shared in the act. Defendant relies on cases such as State v. Castaldi, Mo., 386 S.W.2d 392, which announced the rule that mere presence at the scene and opportunity to commit a crime, without more, is not sufficient basis to sustain a conviction.

■ We do not agree with defendant that there was insufficient evidence to associate him with the robbery. He came to the store with the other two men that morning and returned with them in the afternoon. While the robbery was in progress, Carl West came up and saw either defendant or Monteer standing by the car outside. Even assuming it was defendant, the evidence discloses that after defendant inquired about some route and tried to engage West in conversation, West went inside, was knocked to the floor, and thereafter saw defendant standing at the door where he was struck. West did not see who hit him, but the jury could have found that defendant was the one who struck West after following him into the building and observing West discover the robbery in progress.

West's evidence was sufficient to show that the defendant was standing inside the store by the door at the time one of the other men was holding a knife at Miss Cunningham's neck and the other man was rifling the cash register. He was inside when his companions demanded and received West's money and some checks and when, as they were leaving, they warned Miss Cunningham and West not to leave the store or call out. Defendant left the store with the others and all fled in the same car. Later, a trooper saw three men on the highway in this same car, and after it was pursued, shot at and wrecked, they ran into the woods and tried to escape. In the search which followed, three men were apprehended. One was defendant, and his fingerprints were found on the car. This evidence was sufficient to make a submissible case of whether defendant was present and participating or aiding, abetting or encouraging the robbery.

■ Defendant's second point is a novel one. He claims that the police had an affirmative duty to confront Miss Cunningham and Mr. West with the suspects in a lineup held before the preliminary hearing, and that failure to so do in and of itself caused the confrontation by the witnesses and defendant at the preliminary hearing to be so unnecessarily suggestive and conducive to irreparable mistaken identification that his motion to suppress their in-court identification should have been sustained.

The case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149,

established the principle that a post-indictment lineup is a critical stage of criminal proceedings, at which counsel is required, and that *if* a lineup is held without counsel, the in-court identification by a witness who observed the lineup will be excluded unless it can be established that such in-court identification had an independent origin or that error in its admission was harmless.

In this case no lineup was conducted. Defendant was arrested on June 5, the day after the robbery, and taken to jail. On June 6 he was taken to the magistrate court, where counsel was appointed. A preliminary hearing was set for June 12, but at that time the defendant waived the holding of the preliminary hearing.

At the trial in the Circuit Court, defendant filed a motion to suppress the in-court identification of defendant by witnesses West and Cunningham. A hearing thereon was held outside the presence of the jury, at which West and Miss Cunningham were called as witnesses. They testified that they were subpoenaed to appear at the preliminary hearing on June 12, and for that purpose went to the courtroom at the Saline County Court House. Defendant and two other men charged with participating in this robbery were present. The magistrate and various court personnel, the prosecuting attorney, the attorney for defendant, and some police officers were present. In addition, West estimated that there were ten to fifteen other people in the courtroom, sitting in the room at various places. The witnesses were not familiar with court proceedings and did not know what was occurring and could not hear what was said. Various people, including defendant and the other two men charged in the robbery, went up individually before the magistrate and then went to some other room. The witnesses also testified that they had seen some stories in the newspapers about the arrests, but that they did not see the defendant between the time of the robbery and the time when they saw him in the

courtroom on June 12. The court overruled defendant's motion to suppress.

Defendant makes no complaint that any officer did anything improper at the preliminary hearing in the courthouse. No one suggested to the witnesses that defendant was the one whom they should identify. The claim that the confrontation in the courtroom was tainted is based squarely on the proposition that defendant was denied the right to be viewed by his accusers in a lineup between the time of his arrest and the date for the preliminary hearing.

We have read all of the cases cited by defendant and none of them expressly hold or by implication suggest that the due process clause or any other constitutional provision, federal or state, requires a lineup to be viewed by witnesses as a condition to being permitted to make in-court identifications of accused defendants. To so hold would mean that henceforth in every felony case instituted by complaint lineups witnessed by all potential eyewitnesses would be required in advance of a preliminary hearing, and in cases originated by grand jury indictment such lineups would be a prerequisite before trial in the circuit court. This would require substantially additional time by police officials, prosecutors and defense attorneys in a judicial system already heavily burdened in its efforts to cope with the ever increasing case load in criminal cases. In many instances, particularly outside metropolitan areas, it would pose a problem because the officers would not have a sufficient number of comparable persons in jail available for a lineup.

In our judgment, such a mandated lineup is not necessary as a condition of affording defendants a fair trial. The defendant has the opportunity at the preliminary hearing (or at trial in indictment cases) to test by cross-examination the ability of eyewitnesses to identify the accused as a participant in the offense. Defendant could have done that as to West and Cunningham at the preliminary hearing scheduled on June 12. Instead, he elected to waive the pre-

liminary hearing and hence not to avail himself of that opportunity.

We hold that the state was not obligated to hold a lineup prior to the preliminary hearing and that the trial court properly overruled the motion to suppress the in-court identifications.

Judgment affirmed.