**STATE of Missouri,
Plaintiff–Respondent,**

**v.**

**Brian JACKSON, Defendant–Appellant.**

**No. 52931.**

Missouri Court of Appeals,
Eastern District,
Division Five.

April 26, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 25, 1988.

Timothy A. Wynes, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

Defendant Brian Jackson was convicted by a jury of stealing, § 570.030 RSMo. 1986. He was sentenced as a persistent offender to seven years imprisonment. Defendant appeals. We affirm.

On April 6, 1985, defendant and a female companion entered Randy's Jewelry in O'Fallon, Missouri. The store's owner, Randy Hudson, (Hudson) was working alone at the time.

Hudson recognized the female from her previous visits to his store. He immediately became suspicious of the couple's intentions when they told him they were buying a gift for their mother and the price range was anywhere between fifty and a thousand dollars. Defendant and his female companion repeatedly asked Hudson to pull out random pieces of jewelry, inquiring about the price of each piece. Hudson believed these requests to be a ploy to get him to remove as much merchandise as possible from his display cases.

On more than one occasion, Hudson went to a backroom safe to retrieve pieces of jewelry to show defendant and his companion. When in the back room, Hudson could not see the defendant and his companion in the front of the store. After 20 to 30 minutes of pricing jewelry, defendant and his companion left the store without buying anything.

Less than one minute after they left, another customer walked in and began to look at Hudson's watch display. At this time, Hudson noticed that a watch was missing from the display, and he assumed defendant and his companion had stolen it. Hudson immediately called the police to report the theft.

As a precautionary measure, Hudson also contacted another local jeweler, Douglas Peters of Plaza Jewelry, and described defendant and his companion to him. After a couple matching Hudson's description left Plaza Jewelry, Peters contacted the police and described the couple.

Shortly after Peters' call, and approximately four hours after defendant and his companion had left Randy's Jewelry, O'Fallon police officers Kearns and Hanlon spotted a couple matching the descriptions given by both Hudson and Peters at the jewelry counter of a nearby K–Mart store. The defendant and his companion apparently saw the police and split up and began to walk in different directions. Officer Kearns approached defendant and noticed defendant was wearing a gold watch that was too big for his wrist. Hudson later identified this watch as the one stolen from him earlier that day.

At trial, defendant's motion to suppress Hudson's identification testimony was denied. On appeal, defendant contends this denial was error on two grounds.

First, defendant contends that Hudson failed to identify him with complete certainty, and, thus, there was not a sufficient foundation for Hudson's in-court identification. Defendant failed to preserve this issue for appellate review. We consider it, however, under the doctrine of plain error. Rule 30.20.

The record shows that Hudson positively identified defendant as the watch thief twice; once at the preliminary hearing and once at trial. On both occasions, upon cross-examination, Hudson admitted to some uncertainty about his identification testimony. At the preliminary hearing, Hudson admitted he could not be "100 percent" sure of his identification of defendant, and, at trial, he again admitted to some uncertainty.

■ The competency of Hudson's identification testimony was not destroyed by his failure to testify with complete certainty on cross-examination. See, State v. Scott, 699 S.W.2d 760, 766 (Mo.App.1985). The weight of the cross-examination was an issue for the jury to determine in light of all the circumstances and evidence presented. Id.; see also State v. Blackmore 38 S.W.2d 32, 35 (Mo.1931). Thus, Hudson's identification, along with his admission of doubt upon cross-examination, was properly submitted to the jury.

Defendant next contends the trial court erred in denying his motion to suppress Hudson's in-court identification because Hudson's identification testimony was improperly influenced by an identification procedure that was unnecessarily suggestive. Hudson first identified defendant at the preliminary hearing. Defendant argues that the state's failure to conduct a physical lineup prior to the preliminary hearing, deprived him of due process as guaranteed by both the United States and Missouri Constitutions. In addition, defendant contends, at trial, he was the only black person at the attorney's table, and he was wearing an orange jumpsuit. Apparently, defendant believes his skin color and attire improperly identified him as the culprit.

■ In determining the admissibility of identification testimony, reliability, not suggestiveness, provides the linchpin in securing due process. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); see also State v. Motley, 740 S.W.2d 313, 317 (Mo.App.1987). Reliability is assessed under the totality of the circumstances with particular focus on

the following factors: (1) The opportunity of the witness to view the suspect at the time of the crime; (2) The witness' degree of attention at the time of the crime; (3) The accuracy of the witness' prior description of the suspect; (4) The level of certainty demonstrated by the witness at the confrontation; and (5) The length of time between the crime and the confrontation. *See Manson v. Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253. Against these factors, we weigh the corrupting effect of any suggestiveness in the identification procedure. *Id.*

■ There was no undue suggestiveness in the identification procedure here. The State was not obligated to hold a line-up prior to the confrontation at the preliminary hearing, *State v. Haselhorst,* 476 S.W. 2d 543, 546 (Mo.1972). Thus, there is nothing inherently improper about a "show-up" at defendant's preliminary hearing. *Id.* Indeed, any one-on-one confrontation conceivably suggests to the witness that the police believe the subject to be the culprit. In Missouri, however, we routinely hold such show-ups are not unduly suggestive, even when the subject is in handcuffs, *see, e.g., State v. Dodson,* 491 S.W.2d 334,338 (Mo. banc 1973), or is standing alone outside his jail cell. *See State v. Dickerson,* 568 S.W.2d 559 (Mo.App.1978).

■ However, if the show-up here had been unduly suggestive, we would still find Hudson's pretrial identification reliable and thus admissible under the *Manson* test. First, Hudson had ample opportunity to view the defendant. He observed defendant face-to-face in his store for approximately 30 minutes. We are hard pressed to conceive of better circumstances under which to view an individual.

Second, Hudson was highly attentive. Because of his suspicions that defendant and his female companion were trying to steal merchandise, Hudson's concentration on defendant was certainly greater than it would have been under ordinary circumstances.

Third, Hudson gave the police an accurate description of defendant. He correctly described defendant as a slender black male with jutting features, wearing a V-necked sweater with an open-collar shirt. Although he incorrectly described the color of defendant's sweater and he misjudged defendant's exact height, these discrepancies were minor and simply something for the jury to consider. *See State v. Williams,* 717 S.W.2d 561, 565 (Mo.App. 1986).

Fourth, Hudson positively identified defendant at the preliminary hearing. Although on cross-examination he admitted to some uncertainty at both the hearing and at trial, Hudson's doubts were minimal, at best, and were properly submitted to the jury. *See State v. Scott, supra.*

■ Fifth, admittedly, the time between the crime and the confrontation at the preliminary hearing was over five months. Such delay, which Hudson admitted made his identification of defendant more difficult, is not sufficient to render the identification unreliable in light of the other four factors discussed above. As a result, we find the trial court properly admitted Hudson's identification testimony under the *Manson* test.

Defendant next argues that, without Hudson's identification testimony, the state's only evidence linking defendant to the crime would have been his unexplained possession of the stolen watch. This evidence alone, defendant contends, is insufficient to support his conviction. Defendant's argument misses the mark.

■ First, we have already held the trial court properly admitted Hudson's identification testimony which placed defendant at the scene of the crime. In addition, defendant was caught wearing the stolen watch only four hours after the theft occurred. Thus, there was corroborating evidence in addition to the "unexplained possession" of the stolen watch. These facts made a submissible case. *See, e.g., State v. Belcher* 733 S.W.2d 10 (Mo.App.1987).

■ However, even without Hudson's testimony, we would find the state's evidence sufficient to support a conviction. Under Missouri law, an inference of guilt is

permissible from the unexplained exclusive possession of recently stolen property, and this possession and inference are sufficient proof to submit a stealing charge to a jury. *State v. Brown,* 744 S.W.2d 809 (Mo. banc 1988); *State v. Belcher,* 733 S.W.2d 10, 12 (Mo.App.1987).

Finally, defendant contends, as a matter of plain error, the trial court erred in not declaring a mistrial, sua sponte, following the prosecutor's closing argument, which, defendant argues, contained indirect references to defendant's failure to testify. We find no evidence in the record to support this claim.

Admittedly, "a prosecutor is prohibited from adversely commenting on an accused's failure to testify." *State v. Arnold,* 628 S.W.2d 665, 668 (Mo. banc 1982); Mo. Const. Art. I, § 14; § 546.270 RSMo. 1978; Rule 27.05(a). The prosecutor may not say, directly, the "defendant" or "accused" failed to "testify", *e.g., State v. Frankoviglia,* 514 S.W.2d 536, 539 (Mo. 1974), *State v. Hayzlett,* 265 S.W.2d 321, 323 (Mo.1954); nor may he make indirect comments which clearly imply reference is being made to the defendant's failure to testify. *E.g., State v. Reed,* 583 S.W.2d 531, 534 (Mo.App.1979). *See also State v. Arnold,* 628 S.W.2d 665, 668 (Mo.1982). Direct reference to the accused's failure to testify, or an indirect reference which has the identical effect, deprives the accused of a fair trial and, thus, constitutes plain error. *State v. Reed,* 583 S.W.2d at 533.

In the instant case, the prosecutor made the following remarks during his closing argument:

Possession of this watch, what we call recent unexplained possession of stolen property. And there is no explanation here as to how this stolen, oversized watch got on his wrist other than the explanation that he or the girl he was with stole it and acted together.

You notice a thing they don't want to talk about is the fact that he had the watch on. You heard no evidence how the watch got on his wrist less than four hours after the crime, no theory as to how that happened. They were trying to have you ignore that and just focus on the identification, which is not really the issue here. The most important piece of evidence is the fact that he's got the watch on him, not whether the owner can identify him or not. That's just something extra.

We find nothing improper about these statements. They constitute nothing more than comments about defendant's failure to offer evidence on his behalf. In Missouri, we recognize a distinction between a prosecutor's comment on defendant's failure to testify and his comment on defendant's failure to offer evidence. *See, e.g., State v. Robinson,* 641 S.W.2d 423 (Mo. banc 1982). Comments falling within the latter category are not improper, and they do not require the trial judge to declare a mistrial. *State v. Wynn,* 666 S.W.2d 862, 866 (Mo. App.1984). Consequently, we find no manifest injustice in the trial court's failure to declare a mistrial based on the prosecutor's closing argument.

Judgment affirmed.

CARL R. GAERTNER and SIMEONE, JJ., concur.