STATE of Missouri, Respondent,

v.

Lee George MASHEK, Appellant.

No. WD 48682.

Missouri Court of Appeals,
Western District.

Sept. 13, 1994.

Emmett D. Queener, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ELLIS, P.J., and BERREY and SMART, JJ.

ELLIS, Judge.

Lee George Mashek was convicted by a Vernon County jury of the class C felony of stealing property with a value of at least $150, § 570.030, RSMo 1986. He was sentenced by the trial court as a prior and persistent offender to a ten-year term of imprisonment, and appeals both his conviction and his sentence. We affirm but remand for the entry of an order *nunc pro tunc* to correct a clerical error in the trial court's written judgment and sentence.

The evidence at trial established that in September of 1992, Clarence Lovell and his wife Elsie were living in their new double-wide trailer located approximately two miles southwest of Nevada, Missouri, in Vernon County. The Lovells had recently purchased the trailer from Homestead Housing in Ft. Scott, Kansas. Homestead had hired Donald Clark, a bricklayer and stone mason, to build a cinder block foundation for the trailer.

Clark worked on the foundation for several days. Mashek, a friend of Clark's who was looking for work, stopped by the Lovells' home one Saturday while Clark was still working on the foundation. Mashek said he was low on money and asked if Clark had any work for him to perform. In the past, Clark had hired Mashek to assist him at various job sites, carrying bricks, mixing cement and doing whatever needed to be done. Instead of offering him a job, however, Clark mentioned that the Lovells had a tractor, some tillers and other farm implements on their property that he and Mashek might be able to sell.

On the evening of September 19, 1992, Mashek and Clark were riding around in a green Chevrolet pickup truck, drinking and "having a good time" when Clark again suggested that they could make some money by selling some of the Lovells' farm equipment. Around midnight that evening, Mashek and Clark drove to the Lovells' property, went into their barn and hauled out a lawn tractor, a rear tine tiller, a small garden tiller, a chain saw and a weed eater. They brought the property out to the edge of the road, left it there, then drove to a gas station on 54 Highway some four miles away.

Nila Halcomb, her husband Gordon, and her 16–year–old son Gordon lived across the road from the Lovells' home, only half a block away. Mrs. Halcomb became suspicious when she noticed a green pickup truck drive past her house at least twice, the second time "real slow." She told her son "[s]omething[ ] funny" seemed to be going on, and they got in their Dodge pickup and began to follow the other pickup truck. However, as their vehicle approached the other pickup truck, it sped away. Mrs. Halcomb and her son then returned home.

At approximately 12:30 a.m., Mashek and Clark returned to the Lovells' house in their truck to pick up the property they had earlier removed from the Lovells' barn. In order to facilitate loading the tillers and the lawn tractor into the back of the truck, they backed into a ditch so the bed of the truck would be even with the surface of the road. Mrs. Halcomb and her son heard the sound of the pickup truck when it returned, and noticed it had stopped in front of the Lovells' house. She heard squeaking noises, which sounded as if something was being pushed, "like a squeaking lawn mower or something." Mrs. Halcomb then awoke her husband and told him, "[S]omething's going on across the road," adding, "We need to go see about it." Mr. Halcomb dressed quickly, and he and his wife and son jumped in their pickup truck. Mr. Halcomb drove the vehicle, with its lights off, across the street to the Lovells' property.

When they arrived there, Mashek and Clark had just finished loading the lawn tractor, tillers and other items into the bed of their pickup truck, but had yet to shut the truck's tailgate. Mr. Halcomb stopped his pickup truck in front of the green pickup, blocking its path. He then fired a shot from his rifle into the air and told the two men to "hold it." Instead, Mashek, who was in the driver's seat, fled, slamming the green truck into the rear of the Lovells' pickup truck in the process. The suspects' vehicle accelerated and drove off at a high rate of speed, heading east. As it did so, the rear tine tiller fell out of the bed of the truck.

The Halcombs gave chase. After going about a quarter of a mile, the suspects' truck abruptly turned south. It turned so sharply that the lawn tractor and some other items fell from the back of the pickup. The chase continued for several miles at speeds of over 60 miles per hour. At one point, the Halcombs stopped at the house of a woman they knew, and Mrs. Halcomb got out to call the sheriff's department. Mr. Halcomb and his son then resumed their pursuit of the green pickup. When the suspects' vehicle got to within three miles of 69 Highway, it turned south into Kansas, where the chase continued for several more miles.

The chase ended when a train blocked the path of the suspects' pickup truck, and it got stuck in a ditch trying to turn around. Mr. Halcomb told his son to run to a house approximately 300 yards away and telephone the sheriff's office. Then he pulled his pickup truck next to the suspects' vehicle and shined his headlights on it. Mashek was seated behind the wheel, but Clark, who had been a passenger in the vehicle, had escaped by jumping a fence and running through some bushes.[1]

Mr. Halcomb fired another warning shot from his rifle and instructed Mashek to remain in the truck until sheriff's deputies arrived on the scene. A short time later, Mashek was taken into custody by deputies from the Bourbon County (Kansas) Sheriff's Department. They found "numerous tools" in the front and back of the truck, and later determined that the pickup truck was registered to a Ft. Scott building contractor. Mashek was later interviewed in Ft. Scott by the Vernon County Deputy Sheriff, where he stated he and Clark had taken the lawn tractor and tiller from the side of the road.

The lawn tractor taken from the Lovells' barn and recovered by the Vernon County Sheriff's Department about a quarter mile from their house had an estimated value of $1500, and the rear tine tiller recovered some 150 to 200 feet from the Lovells' property was worth approximately $800. The Lovells testified they did not give either Clark or Mashek permission to take those items. Clark testified that, although he had been drinking heavily the evening of September 19, 1992, he did not think he told Mashek that he (Clark) had any right to the property, and did not think there could have been any "mix-up about whether or not [they] had a right to take it."

Testifying in his own defense, Mashek, who admitted to two prior convictions for felony theft, said he never intended to steal any of the Lovells' property. He claimed Clark "never said anything about stealing anything," and merely asked him to help "pick[ ] up some stuff that he had at a job

site that he'd been working at." Shirley Loubier, Mashek's former mother-in-law, testified that she overheard Clark asking Mashek to "help pick up some equipment and some stuff, a mower that some people couldn't pay him [Clark] for." She said Clark told Mashek that the people he had been working for couldn't pay him, "so they was [sic] giving him stuff to ... pay the bill."

■ Mashek raises three points on appeal. In his first point, he asserts that the trial court plainly erred in allowing the prosecutor to "comment on the range of punishment during an objection to [Mashek's] closing argument, thereby denying [Mashek] due process of law." The "comment" about which he complains is contained in this exchange between Mr. Higinbotham (Mashek's trial counsel), Mr. Quitno (the prosecuting attorney), and the trial judge which occurred while Mashek's attorney was criticizing the State's decision to enter into a plea agreement with Mashek's accomplice, Donald Clark:

[BY MR. HIGINBOTHAM]: The State endorses Don Clark as a witness, I take his deposition, and then the State says to you, "I may or may not call Don Clark." May or may not call the guy that they said, "We're going to send you to prison unless you testify against Lee Mashek and send him to prison."

MR. QUITNO: Well, I'm going to object to that. This Defendant can get probation for this offense. To infer that he's going to prison if he's convicted is against the weight of the law, and since it is, I'd ask that it be corrected.

MR. HIGINBOTHAM: Don Clark's testimony at trial was that he could go to prison for this.

THE COURT: All right.

MR. QUITNO: It's completely a misstatement of the law that he's going to prison if he's convicted. I'd ask that it be corrected. I think that's proper procedure.

THE COURT: I'll sustain as to the last statement. Go ahead, Mr. Higinbotham.

MR. HIGINBOTHAM: Thank you.

1. Clark, who was ultimately called by the defense, testified that he entered into a plea bargain whereby he received probation in exchange for his promise to testify against Mashek if necessary.

Mashek claims the prosecutor's statement that Mashek could receive probation upon conviction "injected an issue not before the jury" since Mashek had already been found to be a prior and persistent offender and would therefore be sentenced by the court, not the jury. He acknowledges that he made no objection, either at trial or in his motion for new trial, to the prosecutor's reference to the possibility of probation, but requests plain error review under Rule 30.20.

■ It is true that where the issue of punishment is to be submitted to the court, it is improper for counsel to argue punishment to the jury because such arguments do not bear on an issue to be determined by the jury. *State v. Courtney,* 425 S.W.2d 121, 122–23 (Mo.1968); *State v. Johnson,* 586 S.W.2d 808, 809 (Mo.App.1979). However, in this case the prosecutor was not "arguing" punishment to the jury as contemplated in *Courtney* and *Johnson.* Rather, he merely noted that Clark's testimony would not necessarily send Mashek "to prison" as suggested by Mashek's attorney because probation was a possibility even if Mashek was convicted. Although it is clear from Clark's testimony that the State offered him probation in exchange for his testimony against Mashek, nothing in the record demonstrates or even suggests that the deal was contingent upon either a conviction or a prison sentence. Thus Mashek's attorney mischaracterized Clark's testimony when he quoted Clark as saying the prosecutor told him " 'We're going to send you to prison unless you testify against Lee Mashek *and send him to prison.'* "

Moreover, it was Mashek's attorney, not the prosecutor, who first "injected" the issue of punishment into the case during closing argument. Once Mashek's attorney had done so, by inferring that Clark's plea bargain was contingent upon Mashek being convicted and being sent "to prison" and that a conviction would *necessarily* result in a prison term for Mashek, the prosecutor "was entitled to give a limited but pertinent reply

to the misleading statement" of Mashek's counsel to correct any misimpression this would have given the jury. *State v. Hicks,* 530 S.W.2d 396, 400 (Mo.App.1975); *see also State v. O'Neal,* 618 S.W.2d 31, 35–36 (Mo. 1981); *State v. Montgomery,* 592 S.W.2d 284, 285 (Mo.App.1979).

In any event, in view of the very substantial evidence of Mashek's guilt outlined *supra,* the alleged error introduced by the prosecutor's brief, singular reference to probation in this case does not constitute plain error. *See State v. Murphy,* 592 S.W.2d 727, 732 (Mo. banc 1979) (prosecutor's reference to the possibility of probation or parole during closing argument did not rise to the level of plain error where the remarks were short and comprised only a small part of the closing argument). Point denied.

■ In his second point, Mashek challenges the sufficiency of the evidence to support the trial court's finding that he was a prior and persistent offender under § 558.-016, RSMo Supp.1992. He maintains that the two exhibits offered by the State to prove his status as a prior and persistent offender were inadmissible because they do not comply with the requirements of § 490.130, RSMo 1986, governing the admissibility of out-of-state court records.[2] In particular, he argues that neither State's Exhibit 4 nor State's Exhibit 5 contained any certification from the Clerk of the District Court of Bourbon County, Kansas, that Gerald W. Hart, who had attested to the authenticity of both sets of records and who signed the separate "Authentication" cover pages accompanying them, "was a judge of the District Court of Bourbon County."

Assuming, *arguendo,* that Mashek properly preserved the issue of the admissibility of the exhibits for appellate review and is not otherwise precluded from arguing that they were not properly authenticated due to his voluntary, judicial admission of two prior convictions for "felony theft," Mashek's claim is devoid of merit. Section 490.130, titled

---

**2.** The exhibits about which Mashek complains are authenticated records from the District Court of Bourbon County, Kansas showing that Mashek had two prior felony convictions: one for theft of

property with a value of more than $100 in 1980 (State's Exhibit 4), and another for stealing property with a value of at least $500 but less than $50,000 in 1990 (State's Exhibit 5).

"Certified records of courts to be evidence," provides, in pertinent part:

> The records and judicial proceedings of any court of the United States, or of any state, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice or presiding associate circuit court judge of the court to be attested in due form, shall have such faith and credit given to them in this state as they would have at the place whence the said records come.

State's Exhibits 4 and 5 are part of the record and we have examined them carefully. Both fully meet the criteria set forth in the statute. Both sets of records were "attested by the clerk thereof, with the seal of the court annexed, if there be a seal." Likewise, both were "certified by the judge, chief justice or presiding associate circuit court judge of the court to be attested in due form." *See McMinn v. McMinn,* 884 S.W.2d 277, 279 (Mo.App.W.D.1994) ("[I]n order to be given full faith and credit in a Missouri court, the foreign [court record] must be authenticated: it must bear the attestation and seal of the clerk of the court as well as the certification of a judge.")

Mashek nonetheless doggedly asserts that § 490.130 requires a third statement, namely, "a certification or attestation by the circuit clerk that the person whose signature appears as 'Judge' is a duly commissioned and sworn judge of the foreign court." As can be readily seen, the statute itself contains no requirement that the court clerk certify that the judge who attests to the authenticity of the court records is, in fact, a judge of that court. Nor has such a requirement been engrafted by judicial decision.[3] Mashek's second point is therefore denied.

In his third and final point, Mashek argues that a "typographical error" was made in one line of the court's written judgment sentencing him to a ten-year term of imprisonment as a prior and persistent offender. The "Sentence and Judgment" signed by the trial judge appears to be correct in all regards but for a cryptic reference to § "448.019 RSMO." However, Chapter 448 deals with condominium property and furthermore, there is no § "448.019" within Chapter 448. Mashek therefore requests that the judgment and sentence "be corrected to remove" this erroneous reference, which the State confesses "did not belong" there. The appropriate remedy for this clerical oversight is the entry of an order *nunc pro tunc* under Rule 29.-12(c). *See State v. Anthony,* 857 S.W.2d 861, 868–69 (Mo.App.1993); *Brager v. State,* 625 S.W.2d 892, 895 (Mo.App.1981).

Mashek's conviction and ten-year sentence as a prior and persistent offender for the class C felony of stealing property with a value of at least $150 are affirmed, but the case is remanded with directions that the trial court enter an order *nunc pro tunc* correcting the written judgment and sentence to remove the reference to § "448.019 RSMO."

All concur.

---

[3.] Mashek cites *State v. Lee,* 684 S.W.2d 897 (Mo.App.1984), and *State v. Myers,* 538 S.W.2d 892 (Mo.App.1976), in support of his argument to the contrary. To be sure, the out-of-state court records introduced in those cases contained the additional certification described by Mashek. But in neither case did the court hold or even imply that such a third attestation is *required* by § 490.130.