**STATE of Missouri, Respondent,**

v.

**Douglas WINTERS, Appellant.**

**No. WD 49103.**

Missouri Court of Appeals,
Western District.

March 14, 1995.

As Modified on the Court's Motion
May 2, 1995.

Respondent's Motion to Modify
Denied May 2, 1995.

Patricia A. Richter, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

On November 23, 1993, Douglas M. Winters was convicted by a Jackson County jury of the class C felony of stealing property with a value of $150 or more, §§ 570.030.1 & 570.030.3(1), RSMo 1986. As a prior and persistent offender, § 558.016.2, RSMo Supp. 1990,[1] he was sentenced to a ten year term of imprisonment. In this appeal, Winters chal-

---

1. The record indicates that on June 8, 1989, Winters pleaded guilty to felony charges of second degree robbery and attempted first degree robbery. He was sentenced to seven years imprisonment on each charge, but was out on parole when he committed the crime that is the subject of this appeal.

lenges the trial court's rulings on the admissibility of certain testimony about the value of the stolen property, its refusal to submit Winters' tendered instruction on the lesser included class A misdemeanor of stealing property with a value less than $150, *see* § 570.030.3, RSMo 1986, and its rulings concerning the identification testimony of three of the State's witnesses. The judgment is affirmed.

On November 1, 1992, Cathrina Lockhart was working as a "door greeter" in a Wal-Mart store located in Raytown, Missouri. Her job was to greet customers as they entered the store, place stickers on any packages they brought into the store with them, and just "kind of watch a little bit." If anyone passing her station attempted to leave the store with a package, she was to check that package to see if it was marked with pink Wal-Mart security tape, and to verify that they had a receipt for that item.

At around 2:45 p.m. that afternoon, Lockhart noticed a person standing at the entrance to the store, holding a package on his shoulder. After observing that there was no pink security tape on the box the man was holding, she approached him and said, "May I see your receipt, sir?" The man, whom she identified at trial as the appellant, Douglas Winters, replied "yes," and handed her a slip of paper. After examining it, Lockhart immediately noticed that the slip of paper Winters had given her did not have the word "Wal-Mart" on it and was not, in fact, a Wal-Mart receipt. Rather, it said "All sales final, no refunds, all rooms must be paid in advance" and showed a "two dollar charge down at the bottom."

Becoming suspicious, Lockhart asked Winters to remain where he was while she contacted her supervisor, assistant manager David King, who was working nearby. Lockhart had to yell three times before she was able to get King's attention. Meanwhile, Winters headed for the store's exit. As he left the store, Lockhart exclaimed, "There he goes!" Lockhart then hastily informed King that "a black man wearing a blue and white ball cap just walked out the door with a VCR, and 'had given her a false receipt." King stepped outside and saw a black man

wearing a blue and white ball cap carrying a VCR. When the man reached the store's parking lot, he began running. King, who testified at trial that Winters was the man who ran from the store with the VCR, called out to him three times. Winters did not respond, but instead ran toward a white Ford Granada parked at the far west end of the parking lot. As he did so, the blue and white cap he was wearing blew off his head and fell to the ground.

When he reached the car, Winters set the VCR on top of the trunk, jumped in behind the wheel, and locked the doors. King, who had given chase, then grabbed the VCR and walked around to the driver's side window. He told Winters that he needed to see his receipt for the VCR. Winters responded by telling King he "had paid for it back in receiving." However, King knew that was a lie because there were no cash registers in the receiving department. He therefore repeated his request for a receipt. Winters then reached into his jacket and asked King if he "wanted to get shot." At that point, King feared Winters "was going to pull out a gun."

By this time, Paul Sneed, another Wal-Mart employee, had also arrived. King and Sneed both backed away from the car and walked to the rear of the vehicle to write down its Missouri license plate number, F4N–946. Winters then sped off, leaving King in possession of both the VCR and the cap.

King testified that the wholesale value of the Emerson VCR stolen by Winters was $163.03, and that its retail value was $169.87. He also testified that he was able to determine that Winters had not paid for the VCR because there was no sales receipt or store security tape attached to the box containing the VCR and the electronics department's control log showed that the store had sold only one VCR on November 1, 1992, a General Electric model costing $199.64, to a person named "Everett Rory."

A subsequent investigation by police revealed that from October 30, 1992, to November 3, 1992, Winters had leased a white 1974 Ford Granada with license plate number

F4N–946 from Auto Pawn, Inc., an auto leasing and sales company located in southern Kansas City. After King and D.M. Crockett, the general manager of Auto Pawn, Inc., identified Winters from a police photo spread, Winters was arrested and taken into custody. After being advised of his *Miranda* rights, Winters initially invoked his right to remain silent. However, as he was being transported to the Jackson County Circuit Court Annex for his arraignment, he told a detective, Stan Pierson, that he had in fact stolen the VCR. Winters said, "Off the record, Detective Pierson, I stole that VCR from the Wal–Mart in Raytown, but what happened was, I have a girlfriend that has two college degrees, yet she's addicted to crack cocaine and she's got young children and I thought I could sell the VCR for money to help out with expenses."

Winters, who declined to testify in his own defense, adduced no evidence. He was found guilty, and when his motion for a new trial was denied, he filed this appeal.

Winters' first point on appeal is that the trial court erred in overruling his hearsay objection to the trial testimony of King concerning the value of the stolen Emerson VCR. He claims King said "he determined [that] the wholesale value of the VCR was $163.03 and [the] retail value was $169.87 by looking at the company's inventory records on a computer screen." Winters reasons that this allowed the State to prove an essential element of the charged offense by means of inadmissible hearsay, in violation of his rights to cross-examine the witnesses against him, to due process of law, and to a fair trial.

We have carefully examined the entire transcript and legal file as they relate to King's testimony about the value of the stolen VCR. Our independent review confirms that Winters' claims about the content of King's testimony regarding the value of the VCR are only partially correct. While King did rely on the store's computerized records to ascertain the *wholesale* value of the VCR,[2] he had independent personal knowledge of its *retail* value which was not gained simply by "look[ing] ... up" the appropriate record on the store's computer system. We need not set forth verbatim all the various portions of the record supporting this conclusion. It suffices to say that Winters' hearsay objection was very clearly directed to King's testimony about the VCR's "wholesale value" as opposed to its retail or "sale value." This distinction was reflected throughout the remainder of the trial in the questions posed by counsel for both the prosecution and the defense.

All this is important in properly resolving Winters' first point relied on. As just noted, King's testimony regarding the *retail* value of the VCR stolen by Winters was not hearsay. If a witness' testimony as to a stolen item's *retail* value, standing alone, is sufficient to establish the required element of value in a felony prosecution for stealing property with a value of $150 or more, any error in admitting King's testimony about the VCR's *wholesale* value, even if it was inadmissible hearsay, was harmless. *See, e.g., State v. Green*, 812 S.W.2d 779, 785 (Mo.App.1991) (any error in admitting witness' testimony as to stolen item's value was harmless where there was sufficient evidence of value without her testimony to support appellants' conviction for stealing property with a value of $150 or more). The law in Missouri is that testimony concerning the retail value of a piece of merchandise sold over the counter on a daily basis in the normal course of business is relevant and admissible on the issue of value and can be the *sole* evidence that the stolen property had a value of $150 or more as required for a conviction under § 570.030.3(1), RSMo 1986. *State v. Morgan*, 807 S.W.2d 209, 210 (Mo. App.1991); *State v. Kechrid*, 822 S.W.2d 552, 555–56 (Mo.App.1992). We therefore need not determine whether King's trial testimony about the stolen VCR's wholesale value was in fact inadmissible hearsay not falling under any recognized exception, such as the one for business records, as argued by Winters in his brief. There was other sufficient, admissible evidence on the issue of the stolen VCR's value to support Winters' conviction for felony stealing. Point denied.

---

**2.** King testified that the information contained in those computer records was input by company personnel at Wal–Mart's home office in Bentonville, Arkansas.

■ In his second point, Winters argues the trial court should have submitted his tendered instruction on misdemeanor stealing because "[t]he only evidence presented on the value of the VCR came from Mr. King's inadmissible hearsay testimony." As we have already held, this is not the case. In light of this, and in light of the further fact that Winters offered no evidence indicating that the stolen VCR had a value of *less* than $150, the trial court properly refused the instruction. *Green,* 812 S.W.2d at 789; *Morgan,* 807 S.W.2d at 210–11. Point denied.

Winters' third and final point claims the trial court erred in admitting the identification testimony of Sneed, Lockhart, and King, all of whom identified Winters at trial as the person who stole the Emerson VCR from the Raytown Wal–Mart store. He argues that *their identification testimony should have been suppressed,* not because of any impermissibly suggestive pretrial procedures employed by the police, but because their testimony was supposedly "unreliable." He maintains, for example, that they had only a limited time to view the thief's face, that they must have been distracted, that two of the witnesses (Lockhart and Sneed) apparently failed to provide the police with descriptions of the suspect, that Winters was the only defendant seated at the counsel table, and that their in-court identifications occurred one year after the incident. Winters also complains in the argument section of his brief—but not in his point relied on—about the failure of the trial court to conduct another suppression hearing prior to his second trial.[3] He contends the trial court should not have simply "adopted the prior court's ruling which denied the suppression motion[s]" Winters made before his first trial.

■ Winters' argument has no merit. To begin with, his claim that the trial court should have granted him a second evidentia-ry hearing on his suppression motions is not properly before this court, since it was not included in his point relied on. An assignment of error not set forth in the appellant's point relied on preserves nothing for appellate review. *State v. Hill,* 866 S.W.2d 160, 164 n. 3 (Mo.App.1993). In any event, Winters was not entitled to a second hearing on his pretrial motions to suppress. The record reflects that he received a full hearing on the motions prior to his first trial. The trial judge's decision to adopt the ruling of the previous judge was not error absent some showing that Winters had new evidence to present in connection with those motions. *State v. Brueckner,* 617 S.W.2d 405, 408 (Mo.App.1981). Because Winters did not assert to the trial court that he desired to submit any new evidence which was not presented at the prior suppression hearing, the trial court did not err in failing to afford him a second such hearing. *Id.*

■ Winters' challenge to the admission of the identification testimony of Sneed, Lockhart and King must also fail.[4] Winters' brief makes it clear he is not complaining about any allegedly suggestive pretrial identification procedures employed by the police in their dealings with those witnesses. Of those three witnesses, only one (King) was involved in a pretrial police identification procedure (the photo array), and Winters does not assert on appeal that King's choice of his photograph from the array was the product of anything other than a freely independent selection process. Rather, he maintains that the identifications by King and the others were *unreliable due to a variety of factors completely unrelated to any pretrial identification procedure utilized by the police,* such as their allegedly inadequate opportunity to view the thief, the failure of all but King to provide the police with a description of the suspect, and the passage of time between the crime and the identification. Where, as here,

---

3. This was Winters' second trial on the charge of felony stealing. His first trial apparently ended on June 11, 1993 when the trial judge declared a mistrial.

4. The State asserts that this issue was not properly preserved for appellate review because Winters failed to object when their identification testimony was offered at trial. However, the record demonstrates that at trial, Winters expressly renewed his pretrial motions challenging the admissibility of that testimony and was in fact granted a continuing objection by the trial judge. Moreover, the identification issue was subsequently preserved in his motion for new trial. We therefore address Winters' arguments on their merits.

the defendant's arguments do not involve a claim of impermissible suggestiveness on the part of the police, but rest entirely on factors relating solely to the reliability of the identification made by a particular witness or witnesses, he has no valid basis for arguing that the witness' identification testimony should have been suppressed, because any such factors go only to the *weight* of the testimony, not its *admissibility*. *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990); *State v. Davis*, 860 S.W.2d 369, 374 (Mo.App.1993); *State v. Taylor*, 655 S.W.2d 633, 637 (Mo. App.1983). Likewise, Winters' complaint that the in-court identification testimony was unreliable because he was the only defendant seated at the counsel table also provides no grounds for suppressing that testimony, since it involves a court proceeding, not a pretrial police identification procedure. *See Tidwell v. State*, 784 S.W.2d 645, 647 (Mo. App.1990); *State v. Jackson*, 750 S.W.2d 644, 646–47 (Mo.App.1988); *Taylor*, 655 S.W.2d at 637. The reliability and credibility of the identification testimony of Sneed, Lockhart and King were for the jury to decide. *Tidwell*, 784 S.W.2d at 647. Point denied.

The judgment is affirmed. However, we remand the case for the entry of an order *nunc pro tunc* under Rule 29.12(c) to correct two errors in trial court's written judgment. *See State v. Mashek*, 882 S.W.2d 777, 781 (Mo.App.1994). First, in the written judgment, the trial court found Winters to be only a "prior offender," whereas in its oral judgment, as revealed in the transcript, the court found beyond a reasonable doubt that Winters was a "prior and persistent offender" and sentenced him as such. The transcript revealed that earlier in the trial, the court had, in fact, found that the State's evidence only showed Winters was a prior offender because it appeared that the two previous offenses had occurred on the same date. Later in the trial, the State presented evidence showing that although committed on the same date, the two previous offenses were at different times, different places, and involved different victims. On that basis, the trial court specifically found Winters was, beyond a reasonable doubt, a prior and persistent offender.

Second, the trial court's written judgment states that it found Winters was a prior offender pursuant to § 558.019, as well as a prior offender pursuant to § 558.016 and 557.036.4. The reference to § 558.019 is an error. Winters was never charged as or found to be a prior offender under former § 558.019, which applied only to class A and B felonies and dangerous felonies. § 558.019.2, RSMo Supp.1992. The crime with which Winters was charged, stealing property with a value of $150 or more, is a class C felony. § 570.030.3(1), RSMo 1986. As such, § 558.019 does not apply to Winters and should be removed from the trial court's written judgment.

We therefore affirm the judgment but remand for the entry of an order *nunc pro tunc* to reflect that Winters was found to be a "prior and persistent offender" pursuant to § 558.016 and 557.036.4, and to remove the reference to § 558.019.

All concur.